[No. C051746. Third Dist. June 12, 2007.]

MICHAEL J. EICHER, Plaintiff and Respondent, v.
ADVANCED BUSINESS INTEGRATORS, INC., Defendant and Appellant.

COUNSEL

Downey Brand, Daniel J. Coyle and Cassandra M. Ferrannini for Defendant and Appellant.

Guenard & Bozarth, B. Ross Bozarth and Galen T. Shimoda for Plaintiff and Respondent.

OPINION

**SIMS, Acting P. J.**—In a trial de novo in the superior court after an unsuccessful claim to the Labor Commissioner, Michael J. Eicher, a former employee of Advanced Business Integrators, Inc. (ABI), obtained judgment in his favor for unpaid overtime compensation, along with prejudgment interest and attorney's fees. On appeal from the judgment, ABI asserts Eicher was an exempt administrative employee and was not entitled to overtime compensation. ABI also asserts the trial court's award was excessive and the court erred in awarding attorney's fees pursuant to Labor Code section 1194.[1] We shall conclude (1) ABI did not carry its burden of establishing that Eicher was an exempt employee; (2) the damage award was excessive; and (3) the attorney's fees award was authorized. We shall reverse the judgment with directions. We shall affirm the order awarding attorney's fees and remand for the trial court to determine the amount of attorney's fees for this appeal.

---

[1] Undesignated statutory references are to the Labor Code.

## PROCEDURE

Eicher filed a claim with the Labor Commissioner for overtime compensation not paid to him while he worked at ABI. (§ 98.) After a hearing, the Labor Commissioner found in favor of ABI. In a written order, the Labor Commissioner concluded Eicher was an exempt administrative employee and, therefore, was not entitled to overtime pay.

Eicher appealed to the superior court for a trial de novo on the issue of his entitlement to overtime compensation. (§ 98.2.) After a court trial, the court issued a tentative decision finding Eicher was not an exempt administrative employee and awarding $56,353 in overtime compensation. ABI requested a statement of decision, and, after the trial court issued a proposed statement of decision, ABI filed objections to the proposed statement of decision. The trial court overruled the objections and entered judgment in favor of Eicher for $56,353. ABI filed a notice of appeal from the judgment.

On Eicher's motion, the trial court awarded him $40,000 in attorney's fees pursuant to section 1194, as well as $16,503.60 in prejudgment interest (on the overtime compensation) and $420.12 in costs. ABI filed a notice of appeal from this postjudgment order.

## DISCUSSION

### I

### *Administrative Exemption*

ABI contends the trial court erred in determining that Eicher was not an exempt administrative employee. We conclude ABI did not carry its burden of showing Eicher was an exempt administrative employee.

■ Whether Eicher was an exempt administrative employee presents a mixed question of law and fact because it involves the application of legal categories. (*Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 794 [85 Cal.Rptr.2d 844, 978 P.2d 2].) "In interpreting the scope of an exemption from the state's overtime laws, we begin by reviewing certain basic principles. First, 'past decisions . . . teach that in light of the remedial nature of the legislative enactments authorizing the regulation of wages, hours and working conditions for the protection and benefit of employees, the statutory provisions are to be liberally construed with an eye to promoting such

protection.' [Citation.] Thus, under California law, exemptions from statutory mandatory overtime provisions are narrowly construed. [Citations.] Moreover, the assertion of an exemption from the overtime laws is considered to be an affirmative defense, and therefore the employer bears the burden of proving the employee's exemption. [Citations.]" (*Id.* at pp. 794–795.)

*Facts in Statement of Decision*

The trial court included the following facts in its statement of decision:

ABI owns the rights to ABI MasterMind software, which is used in sports and entertainment venues to schedule staff, manage payroll, credentialing, and security, and keep track of costs. ABI's primary business is to sell the software to these venues, implement the software for the customer, train the customer, and provide additional support. During the implementation phase, ABI typically sends its employees to the customer's site to install and train the customer, based on the specific needs of that customer.

ABI hired Eicher in March 2000, with a starting salary of $60,000 and no overtime compensation. Hired as a consultant, Eicher eventually became a senior consultant. His college degree was in sociology, not computer science. He spent half of his time in the office and the other half onsite at customers' venues. Eicher primarily provided customer service and training on the ABI MasterMind software. He did not hire or fire employees, negotiate contracts with customers, or consult with ABI or its customers about business policies and practices.

ABI carefully monitored the hours Eicher worked, requiring him to account for at least 40 hours per week. It deducted from Eicher's pay for partial-day absences if Eicher had no accrued paid time off (PTO) for the absence.

Eicher worked overtime (more than eight hours per day and 40 hours per week) frequently while employed by ABI. Concerning Eicher's duties as an employee of ABI, the trial court found that Eicher "devoted the majority of his work time in training customer employees on MasterMind and trouble shooting the software when he was engaged in implementation on the customer's site. [Eicher] also spent time gathering information about the customers' employment practices and entering data into the appropriate fields of the MasterMind program. [Eicher] testified that he spent the majority of his time, when in [ABI's] office, performing customer service work. The remainder of his time was spent on individual training and administrative duties."

*Law Concerning Overtime Pay*

■ "Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek . . . shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee." (§ 510, subd. (a).) However, "[t]he Industrial Welfare Commission may establish exemptions from the requirement that an overtime rate of compensation be paid pursuant to Sections 510 . . . for executive, administrative, and professional employees, provided that the employee is primarily engaged in the duties that meet the test of the exemption, customarily and regularly exercises discretion and independent judgment in performing those duties, and earns a monthly salary equivalent to no less than two times the state minimum wage for full-time employment." (§ 515, subd. (a).)

■ Pursuant to the authority granted by section 515 to establish exemptions to the overtime pay provision of section 510, the Industrial Welfare Commission issued wage order No. 4-2001, applicable to professional, technical, clerical, mechanical, and similar occupations. Included in title 8 of the California Code of Regulations, as section 11040, the wage order provides a five-part test to determine whether the administrative employee exemption applies. The employee must (1) perform "office or non-manual work directly related to management policies or general business operations" of the employer or its customers, (2) "customarily and regularly exercise[] discretion and independent judgment," (3) "perform[] under only general supervision work along specialized or technical lines requiring special training" or "execute[] under only general supervision special assignments and tasks," (4) be engaged in the activities meeting the test for the exemption at least 50 percent of the time, and (5) earn twice the state's minimum wage.[2]

---

[2] "A person employed in an administrative capacity means any employee:

"(a) Whose duties and responsibilities involve either:

"(I) The performance of office or non-manual work directly related to management policies or general business operations of his/her employer or his employer's customers; or

"(II) The performance of functions in the administration of a school system, or educational establishment or institution, or of a department or subdivision thereof, in work directly related to the academic instruction or training carried on therein; and

"(b) Who customarily and regularly exercises discretion and independent judgment; and

"(c) Who regularly and directly assists a proprietor, or an employee employed in a bona fide executive or administrative capacity (as such terms are defined for purposes of this section); or

"(d) Who performs under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge; or

"(e) Who executes under only general supervision special assignments and tasks; and

"(f) Who is primarily engaged in duties that meet the test of the exemption. The activities constituting exempt work and non-exempt work shall be construed in the same manner as such terms are construed in the following regulations under the Fair Labor Standards Act effective as of the date of this order: 29 C.F.R. Sections 541.201–205, 541.207–208, 541.210, and 541.215. Exempt work shall include, for example, all work that is directly and closely related

Stated in the conjunctive, each of the five elements must be satisfied to find the employee exempt as an administrative employee.

In its statement of decision, the trial court found ABI did not meet its burden of proof with respect to the first element of the five-part test—whether Eicher performed office or nonmanual work directly related to management policies or general business operations of ABI or its customers. The court did not consider the remaining elements.[3]

### Work Related to Management Policies or General Business Operations

ABI asserts the trial court failed to apply properly the first element of the test for whether Eicher was an exempt administrative employee, which is whether Eicher performed "office or non-manual work directly related to management policies or general business operations." (Cal. Code Regs., tit. 8, § 11040, subd. 1(A)(2)(a)(I).) Noting this test is stated in the disjunctive ("management policies *or* general business operations" (italics added)), ABI claims the court focused only on the first part—whether Eicher performed work directly related to management policies—and did not sufficiently consider whether Eicher performed work directly related to ABI's general business operations.

██ Federal and California authorities "draw a distinction between administrative employees, who are usually described as employees performing work 'directly related to management policies or general business operations of his employer or his employer's customers,' [fn. omitted] and production employees, who have been described as 'those whose primary duty is producing the commodity or commodities, whether goods or services, that the enterprise exists to produce.' (*Dalheim v. KDFW-TV* (5th Cir. 1990) 918 F.2d 1220, 1230.)"[4] (*Bell v. Farmers Ins. Exchange, supra,* 87 Cal.App.4th 805, 820.) Employees engaged in an activity that constitutes the company's

to exempt work and work which is properly viewed as a means for carrying out exempt functions. The work actually performed by the employee during the course of the workweek must, first and foremost, be examined and the amount of time the employee spends on such work, together with the employer's realistic expectations and the realistic requirements of the job, shall be considered in determining whether the employee satisfies this requirement.

"(g) Such employee must also earn a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment. Full-time employment is defined in California Labor Code Section 515(c) as 40 hours per week." (Cal. Code Regs., tit. 8, § 11040, subd. 1(A)(2).)

[3] The trial court also found Eicher was not an exempt executive employee. ABI does not challenge this finding on appeal.

[4] California courts regularly look to federal authorities for guidance in determining whether an employee is exempt, keeping in mind that state statutes and regulations, through different wording, may provide greater protections to workers in some instances. (*Bell v. Farmers Ins. Exchange* (2001) 87 Cal.App.4th 805, 817–818 [105 Cal.Rptr.2d 59].)

primary purpose are likely production workers. (*Martin v. Cooper Elec. Supply Co.* (3d Cir. 1991) 940 F.2d 896, 903.)

In *Bell v. Farmers Ins. Exchange, supra,* 87 Cal.App.4th 805, claims representatives employed by Farmers Insurance Exchange sued for overtime pay that they alleged had been wrongfully denied them. The trial court ruled, on undisputed testimony, that the claims representatives were production workers. In affirming that portion of the ruling the Court of Appeal focused on the fact that the work engaged in by the claims representatives was the core day-to-day business of Farmers Insurance Exchange—that is, adjusting claims. The court concluded: "Since the term 'administrative capacity' imposes an independent requirement of the exemption, our conclusion that claims representatives do not work in an 'administrative role' within the [Farmers] business organization is dispositive and establishes their nonexempt status. We reach this conclusion through an analysis of the peculiar nature of [Farmers'] business and the claims representatives' role in that business, while recognizing that a careful analysis of the employees' duties may be necessary to determine exempt or nonexempt status in other cases." (*Bell, supra,* 87 Cal.App.4th at p. 829.)

Here, Eicher's duties were comparable to those of the claims representatives in *Bell.* He regularly engaged in the core day-to-day business of ABI—that is, implementing the ABI MasterMind product at customer venues and supporting the customers, whether at the customer venues or in the ABI office. While he was required to learn of the customers' management policies and business operations in the course of his work, in order to ensure that the product met the needs of the customers, he did so only to implement the software in the most beneficial way for the customers and not to participate in policymaking or alter the general operation of the business. Eicher's service in implementing the software merely automated processes the customer had previously handled manually.

Citing a former federal regulation, ABI asserts an exempt administrative employee is one who "carr[ies] out major assignments in conducting the operations of the business, or whose work affects business operations to a substantial degree." ( 29 C.F.R. former § 541.205(c) (2004); see *Webster v. Pub. Sch. Emples. of Wash., Inc.* (9th Cir. 2001) 247 F.3d 910, 915 [discussing the federal regulation].)[5] However, ABI did not cite this regulation in its trial

---

[5] "As used to describe work of substantial importance to the management or operation of the business, the phrase 'directly related to management policies or general business operations' is not limited to persons who participate in the formulation of management policies or in the operation of the business as a whole. Employees whose work is 'directly related' to management policies or to general business operations include those work [*sic*] affects policy or whose responsibility it is to execute or carry it out. The phrase also includes a wide variety

court papers. Although Eicher was often the "point person" in working with customers, the concept of what is a "major assignment" with respect to ABI's business operations was not established with evidence or argument at trial. Therefore, ABI did not carry its burden of establishing that Eicher's employment at ABI included carrying out major assignments.

Furthermore, we have found no evidence that California courts have found persuasive under California law this expansive definition of an exempt administrative employee as someone who carries out major assignments. The command to interpret exemption statutes narrowly to protect employees leads us to believe such an expansive interpretation is not appropriate. (See *Ramirez v. Yosemite Water Co., supra,* 20 Cal.4th at pp. 794–795.)

In its opening brief, ABI cites but does not discuss *Horne v. Singer Business Machs., Inc.* (W.D.Tenn. 1976) 413 F.Supp. 52 for the proposition that an employee who modifies computer programs to meet the specific needs of customers is an exempt administrative employee. That case, however, is distinguishable because the employee also participated in company policymaking, which squarely placed the employee within the realm of administrative employees. (*Id.* at p. 53.)

In *Levie v. AT&T Communications, Inc.* (N.D.Ga. 1990) 52 Fair Empl.Prac.Cas. (BNA) 664, affirmed (11th Cir. 1991) 929 F.2d 706 (*Levie*), the employee was a first-level manager in the employer's regional management. His duties included "the coordination of design and implementation of internal telecommunications projects within [the employer's] southern region, providing administrative and technical support through interaction and consultation with users of such equipment, and coordinating design configuration analysis, identifying interdepartmental impact, designing project team coordination, and user training." (52 Fair Empl.Prac.Cas. at p. 664). The district court found the employee was exempt. ABI cites *Levie* for the proposition that, in ABI's words, "[i]nstallation and troubleshooting are also exempt administrative activities." This understates the extent of the employee's duties in *Levie*. He coordinated, designed, and implemented projects, not only working with the customers but also identifying impacts and designing and coordinating project teams. In other words, the employee in *Levie* had more managerial responsibility than Eicher and had an impact on how the business was run. Accordingly, *Levie* does not support ABI's assertion that Eicher's duties made him an exempt administrative employee.

of persons who either carry out major assignments in conducting the operations of the business, or whose work affects business operations to a substantial degree, even though their assignments are tasks related to the operation of a particular segment of the business." (29 C.F.R. former § 541.205(c) (2004).)

■ In summary, Eicher was an employee who engaged in the core day-to-day business of ABI. He had no personal effect on the policy or general business operations of ABI or its customers. We therefore conclude the trial court did not err in determining that ABI failed to carry its burden of establishing that Eicher was an exempt administrative employee.

### Sufficiency of Evidence

In the statement of decision, the trial court, as only a part of the description of Eicher's duties at ABI, stated: "[Eicher] also spent time gathering information about the customers' employment practices and entering this data into the appropriate fields of the MasterMind program." ABI contends that this fact, which was one of the facts that supported the trial court's conclusion that Eicher was not exempt, is not supported by the evidence. We disagree.

According to ABI, the only evidence that Eicher spent time manually entering data into the database fields of the MasterMind program was testimony from an employee of the Sacramento River Cats, Kristi Goldbey. She testified that, in June 2000, Eicher, representing ABI, worked with the River Cats organization to gather information on employees, their level of training, and other characteristics to input into the MasterMind system. The process of tracking, scheduling, and paying employees went from completely manual to completely automated. The impact was like "night and day." Eicher and another ABI employee were consultants on the River Cats job. They trained River Cats staff and helped complete the implementation of the MasterMind system and, later, continued to train and resolve any problems that came up. Initially, Eicher manually entered into the system information about employees—the skills, positions, and availability. He only spent about two days at this part of the implementation.

ABI asserts it was improper for the trial court to rely on this evidence concerning the River Cats implementation in finding that Eicher spent time entering data into the systems because the River Cats implementation came at a time before the period of time for which Eicher is claiming overtime compensation. While it is correct that the River Cats implementation in the spring of 2000 preceded the time period for which Eicher is claiming overtime compensation (July 23, 2001, to June 1, 2004), the trial court did not purport to rely on this evidence in making its finding of fact. Furthermore, there was other evidence that supported this finding of fact. Eicher, himself, testified that he commonly gathered data and entered the data into the system manually when working with a customer. Data gathering and database construction took between 10 and 15 percent of his time. Eventually, a program was developed to import some of the information about employees from the customer's payroll system. This automated some of the manual data

entry. Although there was some evidence that parts of the process were automated, the trial court properly relied on Eicher's testimony that he spent 10 to 15 percent of his time in data gathering and entering that data into the system.

Defendant's contention that the facts in the trial court's statement of decision were not supported by evidence is without merit.

## II

### Damages

For the purpose of billing customers, ABI kept track of Eicher's time. Eicher was required to account for at least 40 hours per week. This included, however, PTO. Therefore, ABI's billing system record of Eicher's hours was not necessarily the time he worked.

Eicher submitted to the court the billing system records and based his claim for the amount of damages on those records as an indicator of how many hours he worked. In the statement of decision, the trial court accepted these estimates based on the billing system records as the number of hours Eicher worked and calculated Eicher's overtime compensation from them. ABI objected to the statement of decision on the ground that the calculation of overtime compensation improperly included as hours worked the time that Eicher was off with pay. The trial court overruled the objection.

On appeal, ABI renews its argument that the trial court improperly included as hours worked the time that Eicher was off with pay. We find merit in this argument and will order the damages award reduced accordingly.

### Eicher's Forfeiture Argument

Eicher asserts ABI forfeited the argument that the evidence does not support the damages award because ABI did not make a motion for new trial. We disagree.

■ "[W]here the ascertainment of the amount of damage requires resolution of conflicts in the evidence or depends on the credibility of witnesses, the award may not be challenged for inadequacy or excessiveness for the first time on appeal. To permit a party to do so without a motion for new trial would unnecessarily burden reviewing courts with issues which can and should be resolved at the trial court level. [Citation.]" (*Glendale Fed. Sav. & Loan Assn. v. Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 122 [135 Cal.Rptr. 802].) In this case, however, ABI does not ask this court to

resolve conflicts in the evidence or evaluate credibility. Instead, ABI asserts that, viewing the evidence in the light favorable to the judgment—that is, to Eicher—the evidence still does not support the judgment. Therefore, it was not necessary to move for a new trial in order to preserve this point for appeal.

Eicher also asserts ABI forfeited this argument because it accepted Eicher's computations without presenting any evidence of its own on the subject. Although it is true ABI did not present evidence, such as overtime records, to rebut Eicher's evidence, we must still determine whether Eicher's evidence supports the damages awarded.

*Standard for Determining Unpaid Overtime Pay*

█ "Although the employee has the burden of proving that he performed work for which he was not compensated, public policy prohibits making that burden an impossible hurdle for the employee. [Citation.] '[W]here the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a . . . difficult problem arises. The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation . . . . In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.' [Citations.]" (*Hernandez v. Mendoza* (1988) 199 Cal.App.3d 721, 727 [245 Cal.Rptr. 36].)

Here, Eicher submitted evidence from ABI's billing system concerning the hours attributed to Eicher. ABI offered no evidence in response. It appears ABI did not keep accurate records of Eicher's overtime. Accordingly, we must determine what can reasonably be inferred from the evidence Eicher submitted.

*Reasonable Inferences from Eicher's Evidence*

Eicher testified that the time reflected in the billing summary included all of the PTO he took. For example, when asked whether the number of hours

reflected for 2001 included the time off during that year, Eicher replied affirmatively. From this, we must conclude that the total number of hours worked is inaccurate; it is too high because it includes time Eicher took off. Eicher accrued at least 120 hours of PTO per year during the time for which he now claims overtime should have been paid, for a total of 310 hours.[6] He had not used about 85 hours of the accrued PTO. Therefore, it is unreasonable to conclude from the evidence that Eicher worked all of the 10,213 hours reflected in the billing summaries, as found by the trial court. It is necessary to subtract from that amount 225 hours (310 PTO accrued minus 85 hours of PTO not used). Accordingly, we must subtract this number of hours from the trial court's award. Because there is no evidence concerning when Eicher used the PTO, we must use the lowest overtime compensation awarded by the trial court ($43.27 per hour) to determine the amount by which the award must be reduced, which is $9,735.75 ($43.27 x 225 hours = $9,735.75).

By subtracting $9,735.75 from the award of $56,353.00, we arrive at the highest amount of unpaid overtime pay ($46,617.25) supported by the evidence and reasonable inferences drawn from the evidence.[7] The award, therefore, must be reduced to that amount.

### III

### *Attorney's fees*

The trial court awarded $40,000 in attorney's fees to Eicher pursuant to section 1194,[8] which allows a prevailing employee to recover attorney's fees in a "civil action" for unpaid overtime compensation. ABI contends the trial court was without authority to award attorney's fees, because section 1194 does not apply to section 98.2 "appeals" from administrative decisions, and section 98.2[9] does not authorize fees in this case. We shall conclude section 1194 authorizes an award of attorney's fees for fees incurred in the

---

[6] Although there was some evidence that Eicher accrued even more than this amount, ABI apparently concedes on appeal that it cannot support a higher amount of PTO from the evidence, especially since we draw all reasonable inferences in favor of Eicher.

[7] Eicher does not dispute the substantive merit of ABI's argument; he argues only that ABI cannot raise it on appeal.

[8] Section 1194 says, "(a) Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit. [¶] (b) The amendments made to this section by Chapter 825 of the Statutes of 1991 shall apply only to civil actions commenced on or after January 1, 1992."

[9] Section 98.2, subdivision (c), says, "If the party seeking review by filing an appeal to the superior court is unsuccessful in the appeal, the court shall determine the costs and reasonable

trial court when an employee prevails in the trial court in a section 98.2 "appeal" from an administrative decision.

"Under the Labor Code, if an employer fails to pay overtime compensation, the employee may file a civil action (. . . § 1194) [fn. omitted] or may pursue an administrative remedy set forth in sections 98 et seq., by filing a complaint with the Labor Commissioner . . . . Section 1194 provides in pertinent part that an 'employee is entitled to recover in a civil action the unpaid balance of the full amount of . . . overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.' " (*Sampson v. Parking Service 2000 Com., Inc.* (2004) 117 Cal.App.4th 212, 215 [11 Cal.Rptr.3d 595] (*Sampson*).)

Section 98.2 provides for a trial de novo after the Labor Commissioner issues a decision: "Within 10 days after service of notice of an order, decision, or award the parties may seek review by filing an appeal to the superior court, where the appeal shall be heard de novo." (§ 98.2, subd. (a).) The same statute provides for an award of attorney's fees if the appealing party is unsuccessful: "If the party seeking review by filing an appeal to the superior court is unsuccessful in the appeal, the court shall determine the costs and reasonable attorney's fees incurred by the other parties to the appeal, and assess that amount as a cost upon the party filing the appeal." (§ 98.2, subd. (c); see fn. 9, *ante*.)

Thus, section 1194 broadly allows a prevailing employee to recover attorney's fees in a "civil action." Section 98.2, which authorizes an administrative decision to be "appeal[ed]" to the trial court, allows a prevailing employee to recover attorney's fees only if it was the employer who filed the "appeal" in the trial court. In this case, it was the employee who filed the "appeal" and prevailed. By its plain language, section 98.2, subdivision (c), does not provide for an attorney's fees award to a successful "appellant."

As we shall explain, section 98.2 is a specific statute that penalizes unsuccessful "appellants." Section 1194 is a specific statute that allows successful employees (but not successful employers) to recover attorney's fees. To allow the successful employee in this case to recover fees under section 1194 would not conflict with or render superfluous section 98.2. Not to allow the employee to recover under section 1194 would undermine the purpose of section 1194.

---

attorney's fees incurred by the other parties to the appeal, and assess that amount as a cost upon the party filing the appeal. An employee is successful if the court awards an amount greater than zero."

Additionally, though not at issue here, section 98.2, subdivision (j), allows the judgment creditor to recover attorney's fees incurred in enforcing the judgment.

Thus, the purpose of section 98.2, subdivision (c), is " 'to discourage meritless and unwarranted appeals by assessing costs and attorneys' fees against unsuccessful appellants.' " (*Lolley v. Campbell* (2002) 28 Cal.4th 367, 376 [121 Cal.Rptr.2d 571, 48 P.3d 1128].)

Section 1194, which authorizes fee awards only in favor of employees, is a " 'one-way' fee-shifting statute," the purpose of which is to provide a " ' "needed disincentive to violation of minimum wage laws." (Sen. Rules Com., Analysis of Sen. Bill No. 955 (1991–1992 Reg. Sess.) as amended Sept. 10, 1991 . . . .)' " (*Bell v. Farmers Ins. Exchange, supra*, 87 Cal.App.4th 805, 829.)

ABI cites *Sampson, supra*, 117 Cal.App.4th 212, for the proposition that, if an employee chooses to pursue the administrative remedy, the sole right to recover attorney's fees is governed by section 98.2, not by section 1194. However, *Sampson* held an employee was not entitled to recover attorney's fees *incurred during the administrative proceedings*. (117 Cal.App.4th at p. 228.) The trial court in *Sampson* did award the employee attorney's fees incurred during the trial de novo in the trial court (presumably under section 98.2, subdivision (c), because the unsuccessful "appeal" was filed by the employer). (117 Cal.App.4th at pp. 216, 228.) There was no challenge to this part of the award in the appeal to the Court of Appeal.

*Sampson, supra*, 117 Cal.App.4th 212, said, "if an employee pursues an administrative remedy under section 98 to recover overtime compensation, the sole right to recover attorney fees is governed by section 98.2, subdivision (c), and not section 1194." (*Id.* at p. 228.) However, *Sampson* cannot be read to preclude the employee in this case from recovering attorney fees incurred in the trial court, because *Sampson* also said, "we decide only that under the Labor Code an employee who initially files a complaint with the commissioner bears the cost to proceed *in the administrative forum*. Administrative relief remains an expeditious and economical way to obtain unpaid wages and overtime compensation, and the attorney fees provision of section 98.2, subdivision (c), creates a disincentive to delay payment through unmeritorious appeals to the superior court. While a civil action may ensure the recovery of all the attorney fees incurred to prosecute an overtime compensation claim, it may also result in the delay in the payment of overtime compensation because of protracted litigation and appeals. The employee must weigh the benefits and risks of the two options the Legislature has established to prosecute an overtime compensation claim, and choose one or the other option." (*Ibid.*, italics added.) *Sampson* also rejected the employee's argument that the administrative hearing was simply one stage of the de novo proceeding in the trial court. (*Id.* at pp. 228–229.)

Here, there is no claim for attorney's fees incurred during the administrative proceedings. Thus, *Sampson* is not controlling.

As indicated, section 1194 is a " 'one-way' fee-shifting statute," the purpose of which is to provide a " ' "needed disincentive to violation of minimum wage laws." (Sen. Rules Com., Analysis of Sen. Bill No. 955 (1991–1992 Reg. Sess.) as amended Sept. 10, 1991 . . . .) An analysis of the bill submitted to the Senate in advance of the vote stated that, "[t]hese additional remedies are especially necessary in situations where the employees themselves pursue a private action to recover unpaid wages or overtime." ' " (*Bell v. Farmers Ins. Exchange, supra*, 87 Cal.App.4th 805, 829.)

When an employee files a section 98.2 "appeal" from an administrative decision, it is the employee who is pursuing the action, though in some cases the employee may be represented by the commissioner (*Lolley v. Campbell, supra*, 28 Cal.4th at p. 372). The trial de novo, though labeled an "appeal," is " ' " 'a trial anew in the fullest sense,' " ' " in which the administrative decision is entitled to no weight whatsoever, and the parties may present entirely new evidence to the trial court. (*Ibid.*; see also *Sampson, supra*, 117 Cal.App.4th 212, 219–220.)

Thus, for purposes of section 1194, the section 98.2 trial de novo falls within the broad definition of "action" as "an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, [or] the redress or prevention of a wrong . . . ." (Code Civ. Proc., § 22.) That section 1194 refers to "civil action" rather than "action" is not a reasonable basis upon which to deny fees to a successful employee. We express no view on whether a section 98.2 trial de novo constitutes an "action" for any other purpose. (See, e.g., *Rogers v. Municipal Court* (1988) 197 Cal.App.3d 1314, 1318 [243 Cal.Rptr. 530] [although section 98.2 notice of "appeal" may be thought of as an initial trial pleading, it is not a pleading for purposes of the rule that an officer of a corporation who is not an attorney may not file a civil complaint in superior court].)[10]

Our construction of section 1194 does not render section 98.2, subdivision (c), superfluous. Section 98.2, subdivision (c), would allow a successful employer to recover attorney's fees if the employer prevailed in a section 98.2 "appeal" filed by the employee. The employer in such a situation would not be entitled to attorney's fees under section 1194, which authorizes fee awards only in favor of employees.

---

[10] The recent case of *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094 [56 Cal.Rptr.3d 880, 155 P.3d 284] said that trial courts in section 98.2 "appeals" have discretion to permit additional related wage claims that were not presented in the administrative proceedings. Nothing in *Murphy* is inconsistent with our opinion in this case.

Nor does our construction of section 1194 conflict with section 98.2. Thus, the purpose of section 98.2, subdivision (c), is "'to discourage meritless and unwarranted appeals by assessing costs and attorneys' fees against unsuccessful appellants.'" (*Lolley v. Campbell, supra*, 28 Cal.4th at p. 376.) *Lolley* describes some of the 1980 legislative history of section 98.2: "An early analysis of the bill that added the fee-shifting fee provision to section 98.2 . . . noted that its fiscal effect included 'possible moneys to the State on the basis of attorneys' fees and other costs that would be assessed.' [Citation.] A later analysis of the bill observed that '[s]ince the commissioner is successful in about 80% of all appeals, this bill would result in a net increase in revenues to the commissioner.' [Citation.] Before the bill was signed by the Governor, the Department of Industrial Relations submitted an enrolled bill report explaining that '[i]n 1979 the Labor Commissioner was successful in 80% of the appeals to the court so that in most appeals, attorney fees and cost[s] would be awarded . . . .' [Citation.] It appears, therefore, that the Legislature viewed the statute as providing for reasonable attorney fees and costs to be awarded for legal services provided by the Labor Commissioner as well as by private attorneys." (*Lolley, supra*, 28 Cal.4th at pp. 375–376, citation omitted.)

Thus, because the Labor Commissioner was not involved in the appeal in this case, it does no disservice to section 98.2 to allow the employee to recover attorney's fees under section 1194. To the contrary, denial of fees would be inconsistent with the legislative intent of administrative hearings under section 98.2 (Berman hearings), which is "to provide a speedy, informal, and affordable method of resolving wage claims." (*Cuadra v. Millan* (1998) 17 Cal.4th 855, 858 [72 Cal.Rptr.2d 687, 952 P.2d 704].) The legislative intent in creating Berman hearings (Stats. 1976, ch. 1190, §§ 4–11, pp. 5368–5371) was to expedite the handling of claims and "discourage obstruction and stalling tactics engaged in by some employers knowing that the only recourse available to the Labor Commissioner to enforce a valid claim is to sue in the Superior Court. That process often delays final resolution and many times when a court decision is finally rendered on a matter, the employer is no longer in business or has declared bankruptcy or has reorganized under a different name, all of which frustrates the purpose of the Labor Code protections regarding timely and complete payment of wages to California workers." (Cal. Dept. of Industrial Relations, Enrolled Bill Rep. on Assem. Bill No. 1522 (1975–1976 Reg. Sess.) Aug. 16, 1976.)

In many cases, an employee's attorney's fees in a trial de novo will exceed his or her wage recovery. In this case, for example, the wage recovery ($46,617.25) is only about $6,600 more than attorney's fees ($40,000). Thus, after payment of his attorney's fees, plaintiff Eicher would recover only 14 percent of the wages due him if he were not allowed to recover attorney's fees. Such a result would discourage employees from pursuing valid claims for wages

owing. Public policy favors employees in their efforts to recover overtime compensation. (See *Gould v. Maryland Sound Industries, Inc.* (1995) 31 Cal.App.4th 1137, 1148 [37 Cal.Rptr.2d 718] [broad public interest in enforcing overtime laws].)

ABI cites *Dawson v. Westerly Investigations, Inc.* (1988) 204 Cal.App.3d Supp. 20 [251 Cal.Rptr. 633], in which the Appellate Department of the Superior Court of Los Angeles County held an employer who prevailed in its section 98.2 "appeal" to the trial court was not entitled to attorney's fees or costs under section 98.2, because that statute authorized fees/costs only against unsuccessful "appellants," not in favor of successful "appellants." *Dawson* said section 98.2 was an exception to the general rule of Code of Civil Procedure section 1032, subdivision (b), that a prevailing party is entitled to costs except as otherwise provided by statute. (*Dawson, supra*, at p. Supp. 24.) However, *Dawson* did not have occasion to consider section 1194— which would not have applied in that case because section 1194 authorizes awards only in favor of prevailing employees, not prevailing employers, and in *Dawson* the employer was the prevailing party.

ABI argues that resorting to section 1194 in order to grant an attorney fee award *in favor of* the section 98.2 "appellant" would nullify the implied rule of section 98.2 that only "respondents" can get attorney's fees. ABI cites the principle that statutes expressly permitting fees for only a particular prevailing party have been interpreted as denying fees for the other party, even if it prevailed. (*Earley v. Superior Court* (2000) 79 Cal.App.4th 1420, 1429 [95 Cal.Rptr.2d 57] (*Earley*).) However, while section 98.2 does not authorize fees for successful appellants, it does not necessarily prohibit those persons from obtaining fees under another statute such as section 1194.

*Earley, supra*, 79 Cal.App.4th 1420, does not help ABI. There, as part of a class certification process in a case for unpaid overtime compensation, the trial court ordered a notice to be mailed to absent class members which included an advisement that if the employer prevailed, the class members may be liable to pay the employer's attorney's fees under section 218.5,[11] which entitled the prevailing party in an action for wages to recover attorney's fees. (79 Cal.App.4th at pp. 1424–1425.) The appellate court ordered issuance of a writ of mandate directing the trial court to vacate its order. (*Id.* at p. 1436.) *Earley* held section 218.5 did not apply to claims for unpaid overtime compensation, and such claims (which were based on statute

---

[11] Section 218.5 provides: "In any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions, the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action. This section shall not apply to an action brought by the Labor Commissioner."

rather than contract and reflected important public policy) were governed solely by section 1194, which authorized fees for employees only. (79 Cal.App.4th at pp. 1426–1431.) Nothing in *Earley* is inconsistent with our conclusion that a successful appellant/employee in a section 98.2 appeal may recover attorney's fees under section 1194.

 Since *Earley, supra*, 79 Cal.App.4th 1420, section 218.5 has been amended and now expressly states it "does not apply to any action for which attorney's fees are recoverable under Section 1194." ABI argues the Legislature has not expressed any intent for the attorney's fees provision of section 1194 (which was added to the statute in 1991) to apply to an "appeal" under section 98.2 (which has authorized attorney's fees since 1980). (Stats. 1991, ch. 825, § 2, p. 3666; Stats. 1980, ch. 453, § 1, pp. 960–961.) However, the Legislature has not expressed any intent that section 1194 fees not be awarded in section 98.2 "appeals."

ABI also notes section 98.2, subdivision (c), provides that "[a]n employee is successful if the court awards an amount greater than zero," which was added by the Legislature with the express intent to overturn case law holding an employee was unsuccessful in his section 98.2 "appeal" where the trial court granted the employee the same relief awarded in the administrative proceeding, with the sole addition of interest. (Stats. 2003, ch. 93, § 1 ["It is the intent of the Legislature, in enacting this act, to overturn the decision in Smith v. Rae-Venter Law Group (2002) 29 Cal.4th 345 [127 Cal.Rptr.2d 516, 58 P.3d 367]"].) ABI argues: "If section 1194 applies to administrative appeals, there was no need to make this legislative modification to section 98.2[, subdivision] (c), because under [section] 1194 an employee already recovers fees if he or she recovers an amount greater than zero." However, there was a need for the legislative amendment—to overturn the case law, as expressly stated by the Legislature. (Stats. 2003, ch. 93, § 1.)

We conclude the trial court properly awarded attorney's fees under section 1194.

Eicher argues he is also entitled to attorney's fees for this appeal. We agree. (*Morcos v. Board of Retirement* (1990) 51 Cal.3d 924, 927 [275 Cal.Rptr. 187, 800 P.2d 543] [attorney's fees authorized by statute include attorney's fees on appeal].) On remand, the trial court will determine the amount of attorney's fees.

## DISPOSITION

The judgment is reversed with directions. Upon remand, the trial court shall enter a new judgment reflecting (1) a reduced award of $46,617.25 and (2) prejudgment interest in an amount to be determined by the trial court. The order awarding attorney's fees is affirmed. On remand, the trial court shall award attorney's fees for the appeal in an amount to be determined by the trial court. Plaintiff shall recover his costs on appeal. (Cal. Rules of Court, rule 8.276(a)(3).)

Nicholson, J., and Robie, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 29, 2007, S154732.