Filed 7/6/16  Silva v. Burrtec Waste Industries CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| LEONEL SILVA, | |
| Plaintiff and Appellant, | E062866 |
| v. | (Super.Ct.No. CIVDS1212541) |
| BURRTEC WASTE INDUSTRIES, INC., | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  David Cohn, Judge.
Affirmed.

Collins Muir + Stewart, Nicole A. Davis Tinkham, Christian E. Foy Nagy and
Ryan Stenzel for Plaintiff and Appellant.

Littler Mendelson and Diane Kimberlin for Defendant and Respondent.

Plaintiff and appellant Leonel Silva, represented by the law firm of Collins,
Collins, Muir & Stewart, LLP (Collins), successfully sued defendant and respondent
Burrtec Waste Industries, Inc. (Burrtec) for the failure to pay him overtime wages for his
work at a dump owned and/or managed by Burrtec.  Silva filed a motion for attorneys'

1

fees and costs pursuant to Labor Code[1] sections 218.5 and 1194 requesting $526,634.50 in attorneys' fees. The trial court granted Silva's attorneys' fees; however, it significantly reduced the amount that was requested by him.

Silva contends on appeal that the trial court "slashed" reasonable hours expended on litigation for no stated reason. The reduction of partner, associate, paralegal and clerk time was an abuse of its discretion.

## FACTUAL AND PROCEDURAL HISTORY

### A.    COMPLAINT AND JUDGMENT

On December 5, 2012, Silva filed a complaint for recovery of unpaid wages pursuant to section 201 and Industrial Welfare Commission Order No. 4. Silva was employed with Burrtec. Silva alleged that he was not paid for 342 hours of "double-time," or 3,460 hours of overtime pay between 2008 and 2011. Also, he was not paid the statutorily required rest periods for 886 days between September 16, 2008, and May 16, 2011.

A jury trial commenced on March 3, 2014, in San Bernardino County Superior Court. The jury returned its verdict in favor of Silva on March 19, 2014. The jury found Silva was not properly classified by Burrtec as an exempt employee. Based on this determination, the jury concluded that Silva was entitled to overtime hours, rest breaks and that Burrtec willfully failed to pay Silva overtime wages. The jury awarded Silva $75,802.35 in overtime wages and $12,959.40 in penalties.

---

[1] All further statutory references are to the Labor Code unless otherwise indicated.

2

B.     SILVA'S MOTION FOR ATTORNEYS' FEES AND COSTS

On September 26, 2014, Silva filed his Motion for Attorneys' Fees and Costs (Motion). Silva requested $526,634.50 in attorneys' fees and $43,778.03 in costs. Silva requested fees pursuant to sections 98.2, subdivision (c), 218.5, and 1194. Silva argued in the motion that the case presented a "significant financial risk to counsel" because it was based on a contingency. Silva also argued that the verdict amount did not limit the attorneys' fees award. Silva cited to numerous cases that involved small verdict amounts and high attorneys' fees awards. Silva attached the background and experience of each of the attorneys who worked on the case. This included senior partner and trial attorney Brian K. Stewart, who Silva calculated at an hourly rate of $495 per hour and Nicole Tinkham, partner, who billed at $465 per hour. The associates who worked on the case were billed at $365 per hour and the paralegals/law clerks were billed at $190 per hour. Silva argued that multiple attorneys could work on a case. The high attorneys' fees were based on the fact it was a contingency case.

Tinkham provided a declaration. Burrtec provided one banker's box of documents and plans for the dump in discovery. Review of the plans required an engineering professional. Tinkham defended Silva's two-day deposition, and deposed two other witnesses. Other associates handled two other depositions. A full day of mediation was handled by Tinkham and was unsuccessful. Tinkham prepared for trial, including meeting with witnesses, and preparing motions in limine and exhibits. She attended the three-week trial. A paralegal had to provide translation for Silva and other witnesses who only spoke Spanish.

3

Tinkham provided a summary of her time working in prelitigation, filing, discovery, pretrial, trial and posttrial as 371 hours. Tinkham requested $172,515 in fees for the portion of work completed by her. Tinkham had been an attorney at Collins since 2003 and became a partner in 2012. She had tried, arbitrated and mediated six cases; three were as first chair. Silva attached a two-page timekeeping summary. It included only codes for work done. It also had a summary of time for each attorney, with codes for the attorneys.

Stewart also provided a declaration. He had 28 years of experience as a practicing attorney and had tried over 30 jury trials. He was an associate of the American Board of Trial Advocates. He spent over 200 hours working on prelitigation, pretrial, trial and posttrial phases in the instant matter. He met with the client, witnesses, reviewed thousands of pages of evidence, reviewed depositions, assisted with motions in limine, and attended the nine-day trial from March 3, 2014, through March 17, 2014. He was requesting $99,198 for the 200.40 hours spent on the case.

Valerie Gallo was an associate who worked for Collins. She had spent "well over" 481 hours on Silva's case in prelitigation, filing, discovery, pretrial, trial and posttrial phases. She took the depositions of two witnesses and attended the Silva deposition. She was "on-call" during the mediation. She worked on the trial and drafted the judgment order. She had been an associate since 2013. Gallo had spent 498.4 hours on the case and anticipated 50 more hours. She was requesting $200,166 for her work.

C.     BURRTEC'S OPPOSITION TO SILVA'S MOTION FOR ATTORNEYS'

       FEES AND COSTS

On September 15, 2014, Burrtec filed its Opposition to Plaintiff's Motion for

Attorneys' Fees and Costs (Opposition).  Burrtec argued that Silva had to show that the

hours he sought to be compensated for were reasonable and necessary.  Further, Silva had

provided only vague descriptions of the categories of tasks performed.  These "vague,

block-billed attorney time entries" warranted cutting the time.  The declarations

submitted by the attorneys did not adequately address the time spent on what tasks.  Silva

had provided no information defining the codes that were used to calculate hours.  It was

impossible for the trial court to determine whether the time spent was reasonable or

necessary.

It was also difficult to determine if there was duplicate work done by the

attorneys, paralegals and law clerks.  Further, Silva's attorneys could only recover those

amounts incurred with the court action, and none for any administrative proceedings that

preceded filing the complaint.  There was no evidence to justify the hourly rates of

Samuel Muir, David Barker and Christian Nagy, who were also attorneys on the case.

D.     SILVA'S REPLY TO THE OPPOSITION TO THE MOTION FOR

       ATTORNEYS' FEES

Silva filed a Reply to the Opposition to the Motion for Attorneys' Fees (Reply).

Silva contended that a proper showing had been made that the attorneys' fees requested

were reasonable given the complexity and importance of the case.

Silva argued that the declarations of the attorneys clearly set out the tasks and amounts spent on each task. Further, Silva's attorneys would allow the trial court to review all of the billing records. There was little or no duplication of tasks performed. Every attorney, paralegal and law clerk had their own role. Silva was not seeking compensation for any administrative proceedings. The declarations by the attorneys who worked on the case were enough to support payment for the work of non-attorneys.

Tinkham prepared an additional declaration. Tinkham declared that the general practice of Collins was to divide tasks among the attorneys in order to avoid double billing. Further, Burrtec's counsel had more than one attorney at each of the depositions. Stewart also provided an additional declaration. The law clerks were named. Based on the work they performed for Collins, they merited $190 per hour.

There were two paralegals who worked on the case. One had 10 years experience as a paralegal and 20 years as a legal assistant. The other had six years experience as a paralegal and 15 years as a litigation assistant. One of the paralegals, Veronica Chavez, served as an interpreter because Silva and some of the witnesses only spoke Spanish.

Gallo prepared an additional declaration. She was an associate with Collins. She attended a portion of Silva's deposition. She conducted other work on the case while at the deposition. She attended one of the witness depositions with Tinkham in order to be properly prepared for the two other depositions she was to conduct by herself. Gallo also attended a deposition of Burrtec's expert. She worked on other billable tasks pertaining to the trial during the deposition. Further, two attorneys representing Burrtec attended "nearly every deposition." Gallo had spent 10 hours working on the Reply.

6

Christian Foy Nagy also submitted a declaration. Nagy had been an appellate lawyer at Collins since 2007 and had filed numerous successful appeals. She reviewed several law and motion matters in the case. Her rate was $345 per hour. She spent 47.3 hours on the case.

E.     HEARING ON MOTION

On October 21, 2014, the trial court heard the motion. At the hearing, the trial court determined that it did not have sufficient information regarding what time was incurred on various tasks so it could determine whether the fees were reasonable and necessary. Silva was granted the opportunity to provide supplemental information on the billing. The trial court did not need further legal argument; it only wanted evidence of the amount of hours spent on each task.

F.     SUPPLEMENTAL BRIEFING AND RESPONSE

Tinkham filed a declaration in support of supplemental briefing to provide the trial court with additional information on the tasks performed by each attorney, paralegal and law clerk who worked on the case. She had spent over 389 hours working on the case. She billed at $465 per hour. She asked for $181,210.50. Tinkham provided a breakdown of the hours she spent on prelitigation, discovery, meeting with Silva, reviewing documents, preparing for depositions, attending depositions, mediation, preparing for trial, trial that took place over nine court days, and posttrial work on recovery of attorneys' fees and costs.

7

Tinkham attached a chart that listed the attorneys, paralegals and law clerks who worked on the case, their reasonable rates and the hours they billed on the case. Tinkham also provided a new timekeeper document that included descriptions of each of the tasks performed by each of the attorneys, paralegals and law clerks. Also attached was a breakdown of all of the costs expended.

Stewart also filed a declaration. Stewart insisted that taking the case on a contingency basis increased the risk to the law firm. They were entitled to a higher hourly rate because it was a contingency case. Stewart worked with Tinkham because of his many years of trial experience. He was involved with meeting with Silva and witnesses, reviewing thousands of pages of documents, and assisting with all strategy and processes at trial. He provided a detailed chart of the tasks he performed and the time incurred. He also provided that the law clerks and paralegals were well-trained and provided essential assistance on the case.

Gallo also submitted a new declaration. In 2012, Gallo was a law clerk at Collins. She spent over 14 hours working on the case. She became an attorney that same year and continued to work on the case. Gallo spent well over 500 hours working on the case. She set forth detailed statements regarding the hours she spent on the case and the tasks performed including prelitigation, discovery, depositions, mediation, pretrial, trial and posttrial.

Nagy submitted another declaration. She reiterated that she was tasked with reviewing law in motion, pretrial and trial matters to determine possible appellate issues. Nagy stated that due to the unique issues in the case and recent case law developments it

was anticipated that the case may be appealed. She spent 47.3 hours drafting or reviewing motions in limine, doing research for the trial and preparing posttrial motions.

Burrtec filed a response to the supplemental briefing. Burrtec responded that the declarations submitted only provide "lump-sum totals" of hours billed categorized by the phases of the case. The declarations did not provide detailed information about the total amount of time spent by each attorney on specific tasks. Further, attaching the 137-page billing entries was not sufficient. It was Silva's burden to "'prune the fee request to comply with the law.'"

Burrtec criticized Silva for providing no information regarding the qualifications of the law clerks or paralegals to justify their hourly rate of $190. There was no way to discern if their work was duplicative or unnecessary. Burrtec provided a breakdown on how the amount should be adjusted downward for the paralegals and law clerks. Burrtec also contended that it should not be responsible for time Nagy spent preparing for an appeal that was never filed. Further, the trial court could not determine if work performed prior to December 5, 2012, on the case pertained to the administrative proceedings. Again, Burrtec provided a chart detailing the amount the bill should be reduced for prelitigation tasks.

Burrtec insisted the descriptions for work on discovery were vague, and impossible for the trial court to determine if they were necessary or reasonable. The trial court could try to discern from the 137-page billing entries but the court was not required to conduct such review. Further, the descriptions of preparing for depositions were too vague. Further, there were duplicative billings for depositions. The amount billed for

9

meeting and conferring on discovery issues was excessive; there were very few issues. The experts were deemed unnecessary. The billing for the experts should be adjusted downward. Burrtec set forth charts of how the bill should be reduced for discovery and the experts.

Burrtec also disputed the mediation hours. Three attorneys worked on the mediation briefing. Gallo billed for being "on-call" for the mediation. However, in the billing records, Gallo did not bill any time for the day of the mediation. This raised a question of accuracy of the billing and Gallo's declaration. Burrtec provided the amount that the bill should be reduced.

As for pretrial billing, Burrtec faulted Silva for failing to delineate in a comprehensive manner what tasks each attorney performed. Further, the amounts were duplicative and excessive. Burrtec also provided a chart of the amount requested by Silva for the trial. It was a total of over 300 hours for a nine-day trial for three attorneys. This would total 33 hours each day. In fact, based on Tinkham's declaration, she billed 15.32 hours each day for the trial. This amount was excessive, redundant and otherwise unnecessary.

Finally, for the posttrial hours, Silva was requesting 146 hours. This totaled $60,060 for posttrial briefing to recover attorneys' fees and costs.

G.    RULING

The matter was heard on December 5, 2014. The trial court initially stated, "I must confess I'm experiencing what could only be characterized as sticker shock. I think

10

the amount of fees that are claimed are nothing short of exorbitant. We have in excess of half a million dollars sought in attorneys' fees."

The trial court noted that the hourly fee, based on San Bernardino County, was "excessive." However, since Burrtec had not disputed the amount, the hourly rate would remain. The trial court however looked at the amount and determined what the total fee would be taking into account the fee that is normally charged in the community, which was half. However, the trial court stated, "keep in mind I'm not considering cutting your hourly rates by half, but this was just to give myself sort of a reality check." When divided in half, the total fees amounted to $272,737 "which I still think just sort of shocks the conscience here."

The trial court noted it was only a 10-day trial from jury selection through the deliberations. The trial court stated, "This not a complicated area of the law. The legal issues are not novel. This is the area of the law that all of you practice in, this wage-an-hour litigation. You know what the law is. It's simple and straightforward. [¶] The issue in the case was a very simple issue. What was Mr. Silva doing at the dump on a day-to-day basis? Was he a bona fide supervisor? Or was he a laborer with glorified title that enabled his employers to avoid having to pay overtime and grant rest breaks and so forth?"

The trial court did not understand the "apparent extreme complexity" that the billing in the case suggested. It required a deposition of Silva, his coworkers and a review of the time records. "It seems to me that there is an extreme duplicative effort here of the attorneys." The trial court noted, "I started going through the bills line by

11

line:  This charge is reasonable, this charge seems to be a little excessive, this charge seems to duplicate what Ms. Davis Tinkham did and so forth.  And I was just spinning my wheels on it."  The trial court had hoped that Burrtec's counsel could provide some clarity but it was apparent "she struggled with it the same way that I did."  However, it was apparent there was a lot of "duplicative effort."

The trial court then stated, "So what I did is I read through the bills and I sort of got, I guess, what I'd call more of a gestalt sense about how much duplication and unnecessary effort there was."  The trial court felt that Tinkham was the primary attorney.  The court determined that 75 percent of the work she performed was reasonable and necessary.  This amounted to an award of $135,919.50.

The trial court noted, "And I sort of stop there and think good heavens, this is even more than the amount of the judgment in the case.  But of course I realized when thinking about it, that's not the issue. . . .  And so the fact that the attorneys' fees are more than the actual judgment really doesn't make any difference."

The trial court then looked to the bill for Stewart.  The trial court determined that Stewart played a secondary role.  The trial court stated, "I think that a great deal of the time that he spent, as I looked through the billing record, I thought was duplicative and unnecessary."  This was especially in light of the simplicity of the case.  The trial court found, "So I got a sense looking through the billing entries that at the most 50 percent of what Mr. Stewart did was necessary and appropriate."  The trial court awarded $51,975, commenting, "which I must confess stopped my heart for a second-chair attorney on the

case. But I think that's a function of the hourly rate, which [Burrtec's attorney] does not dispute."

The trial court had an issue with the hourly rates for Gallo, the paralegals and law clerks. The trial court felt that Burrtec's counsel was only conceding the hourly rates for the "highly competent" counsel of Tinkham and Stewart. As for Gallo, the trial court noted that she was only a law clerk and a brand-new associate. The trial court found she should be billed only at a rate of $175 per hour. Further, some of her time was duplicative and unnecessary given the work by Tinkham and Stewart. The trial court felt that 25 percent of the 504.3 hours requested was reasonable. This amounted to $22,064.

The trial court felt that the work done by the paralegals and law clerks was "de minimis." It recognized a person named "Ghavimi" spent about 40 hours which seemed legitimate. Further, an appropriate rate was $75 per hour for a total of $3,000.

Tinkham, who represented Silva at the proceeding, objected that the case was simple. The case involved the examination of all the records at the dump for the time spent on tasks by Silva and other workers. Further, Burrtec's defense was that Silva spent time working with San Bernardino County on regulatory issues, which was a supervisor duty and all of the regulations had to be reviewed.

Tinkham also addressed the lodestar figure. The trial court had to look at what a fee-paying client would be charged and would pay. Collins's bill was in line with what it would normally receive in a case such as this. Tinkham had personally worked on similar cases and charged the rates set forth in the motion and supplemental briefing. The trial court inquired, "Mr. Silva, who worked at the dump, would pay you in excess of half

13

a million dollars?" Tinkham denied she was talking about Silva. The trial court retorted, "Similarly situated dump workers would pay your firm in excess of half a million dollars?" Tinkham stated that the standard was what any paying client would pay; the trial court responded that the rate of $495 was not disputed.

Tinkham also argued that it was permissible to use multiple attorneys if the "demands of the case warrant it." There was too much information for one attorney. Moreover, Tinkham argued that sufficient evidence had been presented as to the need for multiple attorneys at the depositions. Burrtec also had multiple attorneys at the depositions.

The trial court stated that Tinkham had presented a "very compelling presentation," and asked for response from Burrtec's counsel. Burrtec's counsel stated that even if they had two attorneys at the depositions, that did not mean that they were both being paid for by the client. Burrtec again argued it was difficult to pinpoint the duplication of tasks based on the records provided by Collins. Further, Burrtec argued this was not a complex case. There were really only issues pertaining to what Silva did at work.

Burrtec's counsel also clarified that the agreement of hourly rates was for Stewart and Tinkham only. Counsel gave no consideration to the hourly rates of the other attorneys. Burrtec's counsel stated, "And your Honor is correct that in the community in which we practice the rates were not jaw dropping. They would compare with my own. So I would not have—so I did not raise the issue."

Stewart stated that is was not "very fair" to cut his time in half. He had more experience than Tinkham. To cut his time would compensate him only for the time at the trial, which did not take into account his review of documents that had to be done to prepare for trial.

Tinkham also stated that the paralegals and law clerks were critical to the case. The trial court then criticized Collins for claiming a rate of $190 per hour for Gallo, who was essentially reviewing payroll stubs. Tinkham indicated that it required determining what was time that was overtime and calculating rest periods and meal periods, which required legal analysis. Collins charged paying clients $190 per hour for law clerks.

The trial court took the matter under submission. "This is a heck of a lot of money, whether it's 200,000 or whether it's 500,000, it's a lot of money. And I think the parties on both sides deserve a really careful look at this. And I'm going to look at these bills some more, and I'm going to take into consideration all of the arguments that have been raised by both sides."

On December 10, 2014, the trial court ruled that Tinkham would be allowed $135,919; Stewart would be allowed $51,975; Gallo would be awarded $22,064; and the paralegals would be awarded $3,000. The total award of attorneys' fees was $212,958.50.

**DISCUSSION**

Silva contends that the trial court abused its discretion in "slashing" the amount of fees requested from $545,574 to $212,958.50 in a matter brought under section 1194.

Section 1194 provides as follows: "(a) Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." Section 218.5 provides, "[i]n any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions, the court shall award reasonable attorney's fees and costs to the prevailing party."

"[S]ection 1194 is a '"one-way" fee-shifting statute,' the purpose of which is to provide a '""needed disincentive to violation of minimum wage laws.' [Citation.] An analysis of the bill submitted to the Senate in advance of the vote stated that, '[t]hese additional remedies are especially necessary in situations where the employees themselves pursue a private action to recover unpaid wages or overtime.'"""" (*Eicher v. Advanced Business Integrators, Inc.* (2007) 151 Cal.App.4th 1363, 1381.) Burrtec does not dispute that Silva was entitled to some attorneys' fees under section 1194.

We review the trial court's attorneys' fee award for an abuse of discretion. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1094-1095 (*PLCM*); *Serrano v. Priest* (1977) 20 Cal.3d 25, 49.) "The 'experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course

subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.'" (*Serrano*, at p. 49; see also *PLCM*, at p. 1095.) The Supreme Court has held, "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason." (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478-479.)

"'The value of legal services performed in a case is a matter in which the trial court has its own expertise. [Citation.] The trial court may make its own determination of the value of the services contrary to, or without the necessity for, expert testimony. [Citations.] The trial court makes its determination after consideration of a number of factors, including the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case.'" (*PLCM*, *supra*, 22 Cal.4th at p. 1096.) However, the Supreme Court has stated, "'"We do not want 'a [trial] court, in setting an attorney's fee, [to] become enmeshed in a meticulous analysis of every detailed facet of the professional representation. It . . . is not our intention that the inquiry into the adequacy of the fee assume massive proportions, perhaps dwarfing the case in chief.'"'" (*Id* at p. 1098.)

The fees requested under section 1194 must be reasonable. (*Harrington v. Payroll Entertainment Services Inc.* (2008) 160 Cal.App.4th 589, 594.) In *Harrington*, an off-duty police officer provided traffic and crowd control on a movie set. The officer claimed he was shorted $44.63 in overtime compensation. After an unsuccessful attempt to obtain class certification, the officer settled his individual claim for $10,500, then sought an award of attorney fees of $46,277, under the mandatory fee clause of section 1194. The trial court found the request "'unreasonable and excessive'" and even

17

"'confiscatory and unfair,'" given that the lawsuit was not certified as a class action and the value of the plaintiff's claim was $44. The officer was denied all attorneys' fees. (*Harrington*, at pp. 591-593.)

The appellate court agreed that the fee request was absurd; however, section 1194 mandates a fee award as a matter of right. It found, "the most that [the officer] is entitled to is his *reasonable* fee." (*Harrington v. Payroll Entertainment Services Inc.*, *supra*, 160 Cal.App.4th at p. 594.) The appeals court determined that a "reasonable fee" could not be more than $500. It directed the trial court to enter a new order awarding the officer attorney fees of $500. (*Id.* at pp. 594-595.)

In *Ketchum v. Moses* (2001) 24 Cal.4th 1122, a case involving a mandatory attorney-fee statute under the anti-SLAPP law, the Supreme Court found, if "a trial court is concerned that a particular award is excessive, it has broad discretion to adjust the fee downward or deny an unreasonable fee altogether." (*Id.* at p. 1138, fn. omitted.)

At most, a trial court in assessing the appropriate fee, determines a "'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." (*PLCM*, *supra*, 22 Cal.4th at p. 1095.). The lodestar amount can be "increased or decreased by the trial court depending on other factors involved in the lawsuit." (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1294, fn. omitted; see also *Ketchum v. Moses*, *supra*, 24 Cal.4th at p. 1138 ["the trial court is not *required* to include a fee enhancement to the basic lodestar figure for contingent risk"].) However, "No specific findings reflecting the court's calculations [are] required. [Citation.] 'The record need only show that the

18

attorney fees were awarded according to the "lodestar" or "touchstone" approach.'"

(*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 254.)

Here, the trial court properly exercised its discretion. It accepted that the hourly fee for Tinkham and Stewart was appropriate despite its reservations as to the charged amount. It then determined that the amount charged for Gallo, the other associates, paralegals and law clerks was excessive, and within its discretion, reduced the fee. The trial court stated it was taking the matter under submission and was going to review all of the billings, and consider all of the arguments of counsel, and then reach a decision because it determined that both sides "deserve a really careful look at this." There is nothing in the appellate record that shows the trial court failed to conduct such analysis. The trial court did not need to provide a detailed analysis of those fees it found reasonable, and those it found unnecessary in its decision. It merely was tasked with reviewing all of the records and making a determination as to the reasonableness of the fees. We cannot say that the determination was wrong. As such, the trial court did not abuse its discretion in determining the reasonable attorney fees.

On appeal, Silva distorts the record to support his argument that the trial court ignored the billing, decided that since Silva was only a sanitation worker the attorneys' fees were too exorbitant, and that the trial court improperly calculated the lodestar. However, we have thoroughly examined the record, as set forth in detail *ante*, which provides the trial court engaged in a conscientious review of the billing records, determined the fees based on what was reasonable for the issues involved in the case, and

19

appropriately found that the fee should be set at $212,958.50.  Silva has failed to show that the trial court abused its discretion.

## DISPOSITION

The award of attorneys' fees is affirmed.  The parties are to pay their own costs on appeal, including their own attorneys' fees.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


MILLER
                                                                                J.


We concur:


McKINSTER
                    Acting P. J.


SLOUGH
                    J.


20