Filed 2/29/16  Ingrande v. Home Depot. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MICHAEL INGRANDE, | D066532 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2012-00092898-CU-WT-CTL) |
| HOME DEPOT U.S.A., INC., | ORDER MODIFYING OPINION |
| Defendants and Respondents. | NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on February 23, 2016, be modified as follows:

1.  On page 1, in the counsel listing for Defendants and Respondents, "Akin Gump Strauss Hauer & Feld and Rex S. Heinke" is added so the sentence reads:

"Ogletree, Deakins, Nash, Smoak & Stewart, Michael J. Sexton, James T. Conley, Christian A. Hickersberger; Akin Gump Strauss Hauer & Feld and Rex S. Heinke for Defendants and Respondents.

There is no change in the judgment.

McDONALD, Acting P. J.

Copies to:  All parties

Filed 2/23/16  Ingrande v. Home Depot CA4/1 (unmodified version)

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| MICHAEL INGRANDE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>HOME DEPOT U.S.A., INC.,<br><br>    Defendants and Respondents. | D066532<br><br><br><br>(Super. Ct. No.<br> 37-2012-00092898-CU-WT-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Judith F. Hayes, Judge.  Affirmed in part and reversed in part.

Mirch Law Firm, Kevin J. Mirch, Marie C. Mirch and Erin E. Hanson for Plaintiff and Appellant.

Ogletree, Deakins, Nash, Smoak & Stewart, Michael J. Sexton, James T. Conley and Christian A. Hickersberger for Defendants and Respondents.

Plaintiff Michael Ingrande was employed by defendant Home Depot U.S.A., Inc. (Employer) for more than 22 years, rising to the position of assistant store manager, before his employment was terminated by Employer in 2011.  Employer's stated reason

for terminating Ingrande's employment was that he violated rules governing safe operations for Employer's stores by either directing or knowingly permitting an employee under his supervision to enter a trash compactor despite warning signs against entry and the risks to the employee posed by that conduct.  Ingrande disputed his employment was terminated for that incident.  Instead, his lawsuit claimed Employer terminated his employment without cause, in violation of his implied contractual rights, and/or because of his age and/or gender and/or as retaliation for his "whistle blowing" in violation of public policy, asserting the stated reason for Employer's decision to terminate his employment (the trash compactor incident) was pretextual.  He also alleged claims for fraud, unpaid wages, slander and libel (as against both Employer and several named individual defendants), and sought punitive damages.

Employer, and the individually named defendants, moved for summary judgment on all of Ingrande's pleaded claims and alternatively sought summary adjudication on each claim.  Ingrande opposed the motion, asserting triable issues of material fact precluded summary judgment.  The trial court entered summary judgment against Ingrande, and this appeal followed.

I

FACTUAL AND PROCEDURAL BACKGROUND

A. Factual Background[1]

*The Employment Contract and Work Standards*

When Ingrande applied for employment with Employer in 1988, the application he signed expressly provided his employment would be "at-will" and could be terminated by either party at any time, for any reason, without notice or cause. The Employee's Handbook issued by Employer, which Ingrande affirmatively alleged was binding,[2] also explicitly stated his employment was "at-will."

At the time he was hired, Ingrande underwent an orientation at which Employer's policies and procedures were explained to him. Employer's "Code of Conduct" included guidelines describing conduct that would constitute a "Major Work Rule Violation," among which were "[a]ssigning work that places associates at risk of serious harm . . . whether or not such harm or damage occurs," or "knowingly allowing associates to perform work or assignments under unsafe conditions," or "directing any associate to

---

[1] The facts we recite are drawn from Employer's separate statement of undisputed material facts. Although Ingrande's opposition to Employer's summary judgment motion claimed these facts were "disputed," our review of the record confirms he did not dispute the factual *statements*, but only claimed *other* facts undermined the legal impact of the facts on which Employer relied.

[2] Ingrande's third amended complaint apparently alleged he and Employer were bound by the employee handbook. Although he deleted that allegation from the fourth amended complaint (FAC), the operative iteration of his complaint at which the summary judgment motions were directed, the deletion did not relieve Ingrande of that judicial admission. (See generally *Thurman v. Bayshore Transit Management, Inc.* (2012) 203 Cal.App.4th 1112, 1157-1158.)

3

violate company safety standards."  These "Major Work Violations" would normally subject the offender to employment termination for a first offense.

Employer also had written "Critical Operating Safety Standards" that included the admonition "[n]ever enter or reach into the compactor for any reason."  Those same standards reiterated that "directing any associate to violate company safety standards," including "[e]ntering the compactor for any reason," constituted a "Major Work Violation" normally subjecting the offender to employment termination for a first offense.

*The Termination*

On the evening of February 18, 2011, Ingrande was the assistant store manager for a Home Depot store in San Diego, California.  That evening, Ingrande called Mr. Peralta (the store manager) and told Mr. Peralta that an hourly employee, Mr. Jones, had gone into the trash compactor at the store ("the trash compactor incident").  Peralta reported the trash compactor incident to Mr. Campeau, the manager for Employer's "Associate Advice and Counsel Group" (AACG).  The AACG consults with district and/or regional staff about, and provides recommendations concerning, potential discipline.  After an investigation by Campeau concerning the incident,[3] including Campeau's review of photographs and a video depicting the incident and his review of the written statements from Jones and Ingrande about the incident that appeared to be consistent with the video

---

[3]     In opposing the motion for summary judgment, Ingrande did not contest the *fact* of the investigation by Campeau, but instead claimed the investigation as conducted by Campeau was *inadequate*.

4

depiction of the incident, Campeau concluded that (at a minimum) Ingrande knowingly permitted Jones to enter the trash compactor, and may have affirmatively instructed or asked Jones to enter the trash compactor.

Based on his review of the incident, Campeau concluded Ingrande violated Employer's workplace safety rules and recommended Ingrande's employment be terminated.[4] On February 24, 2011, Campeau discussed his findings and recommendations with Danielle Tillman (the regional human resources director for the Pacific South region). Tillman concurred that termination of Ingrande's employment was appropriate.

Employer's records indicate that, on March 1, 2011, Ingrande contacted the AACG department to ask about discipline for entering a trash compactor. He spoke with Ms. Quattlebaum, who told Ingrande it was a major violation subject to employment termination for a first offense. Employer's records also indicate, later that day, Ingrande called back to the AACG department and told Employer he was taking a medical leave of absence due to stress.[5] When Ingrande returned from his leave of absence on April 25, 2011, Employer informed him his employment was to be terminated.

---

[4] Campeau found Jones also violated safety rules. Campeau concluded that, although Jones (an hourly associate) could also have been discharged for this violation, a "final counseling" should be issued to Jones under the circumstances.

[5] The records of Ingrande's March 1 calls indicate he expressed concerns that a Mr. Powers did not like Ingrande's performance and Ingrande was concerned his employment would be terminated, but those records contain no indication Ingrande raised concerns about discrimination, harassment, retaliation, or safety violations at his store.

5

B. <u>The Lawsuit</u>

Ingrande filed this action against Employer and the other defendants alleging a variety of factual claims and legal theories. However, the overarching theory of Ingrande's complaint appears to have been that his job performance made him a threat to one of his superiors (Mr. Powers) because (1) Ingrande's exceptional job performance made him a potential competitor to Powers for job promotions and (2) Ingrande's complaints about safety violations would have harmed Powers's stature because remedying those violations could reduce the profitability of stores under Powers's supervision. Ingrande alleged Powers and others began a smear campaign directed at undermining his position with Employer, including falsely attributing responsibility for the trash compactor incident to Ingrande, and falsely claiming he was a violent person who had assaulted or threatened others. Ingrande asserted his employment was terminated without cause because he did not direct or knowingly permit Jones to violate safety standards, and any evidence supporting that claim was manufactured to justify his employment termination. He also alleged Employer fired him because Employer wanted to replace him with someone both younger than Ingrande and female.

The factual allegations contained in Ingrande's fourth amended complaint (FAC) formed the basis for 11 causes of actions. The first cause of action, for breach of implied contract, essentially alleged Employer's conduct and policies gave rise to an implied obligation it would not terminate Ingrande's employment without adequate cause and that the facts on which it based its decision to terminate Ingrande's employment did not

6

constitute adequate cause because he did not violate Employer's standards of conduct. Ingrande's seventh through 11th causes of action essentially alleged Employer harassed Ingrande and terminated his employment in violation of public policy, including (1) harassing and terminating him in retribution for exposing Employer's improper or unlawful conduct (seventh through ninth causes of action), (2) terminating him because of his age (seventh and 10th causes of action), and (3) terminating him because of his gender (11th cause of action).

Ingrande also alleged several tort claims. The second and third causes of action, sounding in fraud, alleged Employer made numerous representations as to the advantages of working for Employer on which Ingrande relied, but these representations were false and caused injury to Ingrande. The fourth and fifth causes of action, sounding in defamation, alleged Employer and several individual defendants made numerous false and injurious statements (both orally and in writing) impugning Ingrande's conduct and character. Ingrande also asserted a wage claim alleging Employer was required to, but did not, pay him for overtime.

C. The Summary Judgment Motion and Rulings

Employer moved for summary judgment or, in the alternative, summary adjudication as to each claim contained in Ingrande's FAC. By separate motion, the individual defendants moved for summary judgment or (in the alternative) summary adjudication on the libel and slander claims. Ingrande filed opposition to both motions,

7

asserting triable issues of fact precluded summary adjudication on any of his claims, and therefore necessarily precluded entry of summary judgment.

*Ruling on Individual Defendants' Motion*

The court, after sustaining numerous evidentiary objections by defendants to the evidence proffered by Ingrande in opposition to the summary judgment motions,[6] granted summary judgment in favor of the individual defendants on Ingrande's claims for libel and slander. The court noted the individual defendants' motion argued (1) Ingrande did not have admissible evidence supporting his pleaded defamation claims, (2) many of the pleaded defamatory statements were true and/or privileged, and (3) Ingrande had no evidence of malice. The court then found Ingrande's opposition, which "relies in large measure on the allegations of his complaint, general statements by unidentified and unspecified declarants, unsupported argument and purported evidence in his points and authorities, and on *Rifkind v. Superior Court* (1994) 22 Cal.App.4th 1255," did not create a triable issue of material fact as to any of the individual defendants' undisputed facts. After explaining the inapplicability of *Rifkind*, the court concluded Ingrande's showing was inadequate to defeat the showing by the individual defendants that the defamation

---

6    On appeal, Ingrande makes no claim any of the evidentiary rulings was erroneous, and we therefore may disregard all of the evidence as to which the objections were sustained in our assessment of whether the order granting summary judgment was proper.

claims were without merit, and granted the individual defendants' summary judgment motion.[7]

*Employer's Motion*

The court next examined Employer's motion for summary judgment, and again concluded Employer met its initial burden of demonstrating the undisputed facts warranted judgment against Ingrande on his pleaded claims, and his opposition did not create a triable issue of material fact as to any of the undisputed facts on which Employer's motion for summary judgment was premised.[8] The court granted summary adjudication in favor of Employer on each of the 11 causes of action stated against it and, because those rulings disposed of the entirety of the action as against Employer, the court ordered the complaint dismissed. Following Ingrande's unsuccessful motion for reconsideration, the court entered judgment in favor of Employer and the individual defendants, and Ingrande timely appealed.

---

[7] The court also granted Employer's motion for summary adjudication on the defamation claims. Employer argued the undisputed facts showed Employer could only be *vicariously* liable for the statements of the individual defendants and, because summary adjudication of the claims against the individual defendants was warranted, Employer was also entitled to summary adjudication insofar as Ingrande's alleged defamation claims against Employer derived from the statements of the individual defendants.

[8] Because Ingrande challenges most of the court's rulings in this appeal, we separately detail the showings below on each cause of action, and rulings thereon, when evaluating Ingrande's appellate claims as to those separate causes of action.

II

LEGAL FRAMEWORK

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) "A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. [Citation.] . . . In the trial court, once a moving defendant has 'shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established,' the burden shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff 'may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . .' " (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476-477.) Code of Civil Procedure section 437c, subdivision (o), provides that a cause of action has no merit if: (1) one or more elements of that cause of action cannot separately be established; or (2) a defendant establishes an affirmative defense to that cause of action. A defendant need not conclusively negate an element of the plaintiff's cause of action, but must only show that one or more of its elements cannot be established. (*Aguilar,* at p. 853.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof."

10

(*Id*. at p. 850, fn. omitted.)  Although "the court may not weigh the plaintiff's evidence or inferences against the defendants' as though it were sitting as the trier of fact, it must nevertheless determine what any evidence or inference *could show or imply to a reasonable trier of fact*." (*Id.* at p. 856.)  "If [the] party moving for summary judgment . . . would prevail at trial without submission of any issue of material fact to a trier of fact for determination," the motion should be granted.  (*Id.* at p. 855.)

"On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*).)  "On appeal, we exercise 'an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law.' [Citation.]  'The appellate court must examine only papers before the trial court when it considered the motion, and not documents filed later. [Citation.]  Moreover, we construe the moving party's affidavits strictly, construe the opponent's affidavits liberally, and resolve doubts about the propriety of granting the motion in favor of the party opposing it.' " (*Seo v. All-Makes Overhead Doors* (2002) 97 Cal.App.4th 1193, 1201-1202.)

11

## III

## CLAIMS AGAINST INDIVIDUAL DEFENDANTS

A. <u>Background and Ruling</u>

Ingrande's claims against the individual defendants for defamation asserted these defendants stated, either orally (the fourth cause of action for slander) or in writing (the fifth cause of action for libel), that (1) Ingrande was having sexual relations with an employee, independent contractor or customer; (2) Ingrande had a violent temper, carried a concealed weapon, was dangerous, and an armed security guard had been hired to protect associates against potential harm; (3) Ingrande "must have been on drugs"; and (4) Ingrande did not enforce Employer's safety rules and regulations. Ingrande also claimed they made false statements about him in his performance reviews.

In their motion for summary judgment on the defamation claims, the moving individual defendants, in their separate statement of undisputed material facts, demonstrated one of the specified statements (that Ingrande was having sexual relations with an independent contractor) was true, and Ingrande's opposition to the motion conceded the statement was true. The moving individual defendants, in their separate statement of undisputed material facts, also cited Ingrande's admissions in his deposition that he had no competent evidence the remaining statements had been uttered by any of the individual defendants, and Ingrande's opposition to the motion apparently failed to rebut this showing.

The court granted summary judgment in favor of the individual defendants on Ingrande's claims for libel and slander. The court found the individual defendants met their initial burden of demonstrating (1) Ingrande did not have admissible evidence supporting his pleaded defamation claims, (2) many of the pleaded defamatory statements were true and/or privileged, and (3) Ingrande had no evidence of malice. The court then found Ingrande's opposition did not create a triable issue of material fact as to any of the individual defendants' undisputed facts and, because his showing was inadequate to defeat the showing by the individual defendants that the defamation claims against the individual defendants were without merit, the court granted the individual defendants' summary judgment motion.

B. Analysis

On appeal, Ingrande's brief is devoid of any effort to demonstrate what triable issue of material fact existed as to whether the defamatory statement regarding Ingrande's sexual relations with an independent contractor was untrue, and Ingrande has not attempted to show triable issues of material facts existed as to whether the individual defendants actually made the remaining specified defamatory statements. Accordingly, we conclude any claim of error regarding entry of summary adjudication as to Ingrande's claims, insofar as the claims rested on the identified defamatory statements, is waived.[9]

---

[9] Even though our review is de novo, it is limited to issues adequately raised and supported in appellants' briefs. (See *Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6.) We begin with the presumption the judgment appealed from is correct (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564) and adopt all intendments and inferences to affirm the judgment unless the record expressly contradicts them. (See, e.g., *Brewer v.*

13

Ingrande instead limits his argument on appeal to the claim that entry of summary adjudication on the libel and slander claims was improper because his defamation claims pleaded defamatory statements by the individual defendants not addressed when the individual defendants moved for summary judgment, and summary adjudication is improper when it does not completely dispose of a cause of action.  We reject Ingrande's claim, for several reasons.  First, at trial, Ingrande's opposition to the individual defendants' motion for summary judgment contains no reference to this argument, and it is therefore waived.  (*Zimmerman, Rosenfeld, Gersh & Leeds LLP v. Larson* (2005) 131 Cal.App.4th 1466, 1488-1489.)  Second, even had it been preserved, it is without merit.  Ingrande's opening brief identifies only one defamatory statement[10] allegedly

---

*Simpson* (1960) 53 Cal.2d 567, 583.)  These rules place on an appellant the burden of overcoming the presumption of correctness, even when the appellate court is required to conduct a de novo review, and " '[t]he reviewing court is not required to make an independent, unassisted study of the record in search of error or grounds to support the judgment.  It is entitled to the assistance of counsel.  Accordingly every brief should contain a legal argument with citation of authorities on the points made.  If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.' [Citation.]  [¶]  It is the duty of appellants' counsel, not of the courts, 'by argument and the citation of authorities to show that the claimed error exists.' " (*Sprague v. Equifax, Inc.* (1985) 166 Cal.App.3d 1012, 1050 (*Sprague*).)

10    Ingrande's opening brief purports to identify a second defamatory statement not addressed by the individual defendants' motion for summary judgment—that he "violated safety standards"—but his opening brief contains a citation to the record that contains no mention of this alleged defamatory statement, and we accordingly will not further consider it.  (*Sprague, supra,* 166 Cal.App.3d at p. 1050; accord, *United States v. Dunkel* (7th Cir. 1991) 927 F.2d 955, 956 [arguments can be deemed waived when inadequately developed or supported because "[j]udges are not like pigs, hunting for truffles buried in briefs"].)

14

"unaddressed" by the individual defendants' motion:[11] that various individual defendants falsely accused Ingrande of having sexual relations with "employees, independent contractors, or customers." That statement was *specifically addressed* in the individual defendants' motion for summary judgment, including showing Ingrande *admitted* he was in a sexual relationship with a female independent contractor. We conclude Ingrande has not shown the order granting summary judgment in favor of the individual defendants was error.

IV

CLAIMS AGAINST EMPLOYER

A. Defamation

Ingrande's FAC also appeared to allege claims for defamation against Employer premised on statements apart from and in addition to those attributed by Ingrande to the individual defendants, and therefore pleaded defamation claims against Employer that would not have been encompassed by the court's summary judgment in favor of the

---

[11]    We recognize that Ingrande, for the first time in his reply brief, asserts the "most egregious defamatory statement[]" was that Ingrande was in the parking lot with a gun and threatened Mr. Peralta. Although that statement was *not* addressed in the individual defendants' motion for summary judgment, Ingrande has not identified where his complaint alleges that statement was made and our independent search could not unearth it. Moreover, even assuming that statement is somewhere alleged by Ingrande as a defamatory statement *and* that statement had not been addressed in the individual defendants' motion for summary judgment, Ingrande's election to ignore that defect until his reply brief waives any argument that reversal of order granting the motion of the individual defendants may be predicated on that alleged defect. (*Katelaris v. County Of Orange* (2001) 92 Cal.App.4th 1211, 1216, fn. 4.)

15

individual defendants.[12]  Although Ingrande's brief on appeal is somewhat opaque, it appears he argues the court's summary adjudication in favor of Employer on Ingrande's "additional" defamation claims against it was error.  We separately assess the ruling on those aspects of Ingrande's claims of error.

*Background and Ruling*

Employer's motion asserted Ingrande had no *admissible* evidence many of the allegedly "additional" defamatory statements were made (e.g., he was violent and carried a gun, or he must have been on drugs, or he failed to follow rules and regulations, or employees feared him), and the only admissible evidence possessed by Ingrande of harmful statements were statements that were true (he was having a sexual affair with a person hired by Employer, Employer hired a guard because they were concerned Ingrande might harm others at the store, and his employment was terminated because Employer believed he violated its safety policies).  The trial court agreed Ingrande had not demonstrated a triable issue of fact existed, and therefore granted summary adjudication as to these defamation claims asserted against Employer.

---

[12]     To the extent Ingrande's defamation claims against Employer rested on the individual defendants' defamatory statements, our conclusion that summary judgment was properly entered in favor of the individual defendants necessarily supports entry of summary adjudication in favor of Employer.  (Cf. *Lathrop v. HealthCare Partners Medical Group* (2004) 114 Cal.App.4th 1412, 1423 ["Under the doctrine of respondeat superior . . . [citations] [t]he employer's liability is wholly derived from the liability of the employee.  The employer cannot be held vicariously liable unless the employee is found responsible."].)

*Analysis*

On appeal, Ingrande makes no effort to demonstrate why the two arguments posited by Employer below—he did not have admissible evidence as to some of the statements and the other identified statements were true—would not support entry of summary adjudication on his "additional" defamation claims against Employer. Instead, Ingrande merely asserts entry of summary adjudication on the libel and slander claims was improper because his defamation claims pleaded defamatory statements not addressed by Employer's motion for summary judgment, and summary adjudication is improper when it does not completely dispose of a cause of action. However, Ingrande's opening brief identifies only a single defamatory statement purportedly pleaded but left unaddressed by the Employer's motion for summary adjudication on the defamation claims: that he "violated safety standards." However, because his opening brief cites only a portion of the record containing no mention of this alleged defamatory statement, we need not further consider it. (*Sprague, supra,* 166 Cal.App.3d at p. 1050; *United States v. Dunkel, supra,* 927 F.2d at p. 956.) As stated in *Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 116, although we review de novo an order granting summary judgment, "this de novo review does not obligate us to cull the record for the benefit of the appellant in order to attempt to uncover the requisite triable issues. As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority. In other words, review is limited to issues which

17

have been adequately raised and briefed."  Because Ingrande has not satisfied this burden on appeal, we do not further consider his only argument asserting it was error to grant summary adjudication on his claims for defamation as against Employer.

B. Breach of Implied Contract

Ingrande's FAC, in its first cause of action for breach of implied contract, asserted a claim that his employment was terminated without cause in breach of an implied covenant of his employment contract with Employer that his employment would only be terminated for cause.  Ingrande argues the court erred when it entered summary adjudication on this claim, arguing (1) he demonstrated triable issues of material fact on whether his at-will employment contract included an implied covenant restricting Employer to terminating his employment only for cause, and (2) he demonstrated triable issues of material fact on whether Employer had cause to terminate his employment.

*Background*

Employer's motion for summary judgment argued Ingrande's employment agreement, which California law ordinarily presumes to be at will (*Guz, supra,* 24 Cal.4th at p. 335), was *expressly* an at-will contract.  Employer showed Ingrande's employment application (as well as the governing Employee Handbook that Ingrande judicially admitted was binding on him) explicitly verified the parties understood and expressly agreed Ingrande was an at-will employee.[13]  Employer argued Ingrande had no evidence

---

[13]    The language of his employment application expressly stated: "I understand that employment at Home Depot, if offered, is for no definite term and it may be terminated, with or without cause or notice, at any time . . . .  I further understand that this condition

18

creating a triable issue of fact of whether this express at-will contract had been supplanted by a contract limiting Employer's right to terminate his employment, and therefore Ingrande's breach of contract claim failed as a matter of law. Employer alternatively argued that, even if Ingrande could raise a triable issue of fact that Employer needed cause to terminate his employment, the undisputed facts showed Employer honestly concluded Ingrande violated its safety guidelines, and an employer's belief that the requisite cause to terminate exists (even if ultimately incorrect) cannot give rise to liability if that belief was held honestly based on the facts revealed by an appropriate investigation. (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 438-439 ["The question critical to UPS's liability is not whether plaintiff in fact violated the integrity policy by encouraging a subordinate to falsify his timecard, but whether UPS, acting in good faith following an appropriate investigation, had reasonable grounds for believing plaintiff had done so."] (*King*).)

The trial court recognized Ingrande's claim for breach of implied contract was premised on a predicate—he was *not* an "at-will" employee but instead could only be terminated for cause—and on the assertion there was a triable issue of fact of whether Employer had cause to terminate his employment. The court, applying *Guz, supra,* 24 Cal.4th 317, concluded Ingrande's express contract declared he was an at-will employee

---

can only be altered by a written contract of employment . . . signed by both me and the President of the Company. [¶] I hereby further acknowledge that I am expected to abide by all Company rules and regulations . . . but that such rules and regulations do not create a contract between me and the Company or otherwise restrict the right of the Company to terminate my employment. . . ."

and the facts cited by Ingrande to overcome the express at-will contract were inadequate to limit Employer's right to terminate his employment without cause. The court alternatively concluded, even if Ingrande had created a triable issue of fact on whether his employment could not be terminated without cause, the undisputed facts showed the trash compactor incident (if it occurred) *would* provide cause to terminate Ingrande's employment, and Employer investigated the incident and reasonably believed the incident occurred. Ingrande asserts the trial court erred as to both determinations.

*Analysis of "At-will" Holding*

Our Supreme Court in *Guz* recognized there is a presumption an employment contract is at will but cautioned that although "the statutory presumption of at-will employment is strong, it is subject to several limitations." (*Guz, supra,* 24 Cal.4th at p. 335.) *Guz* explained the parties may agree to depart from an at-will agreement, either expressly or by an agreement that is "*implied in fact*, arising from the parties' *conduct* evidencing their actual mutual intent to create such enforceable limitations. [Citing *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 680.] In *Foley*, we identified several factors, apart from express terms, that may bear upon 'the existence *and content* of an . . . [implied-in-fact] agreement' placing limits on the employer's right to discharge an employee. [*Ibid.*, italics added by *Guz*.] These factors might include ' "the personnel policies or practices of the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continued employment, and the practices of the industry in which the employee is engaged." ' " (*Guz,* at pp. 336-337.)

20

"However, ' "[t]here cannot be a valid express contract and an implied contract, each embracing the same subject, but requiring different results.' [Citations.] The express term is controlling even if it is not contained in an integrated employment contract. [Citation.] Thus, the . . . at-will agreement precluded the existence of an implied contract requiring good cause for termination.' [Citations.] The California Supreme Court recently observed in dictum that most California cases 'have held that an at-will provision in an *express written agreement*, signed by the employee, *cannot* be overcome by proof of an implied contrary understanding. [Citations.]' [Quoting *Guz, supra*, 24 Cal.4th at p. 340, fn. 10.]" (*Starzynski v. Capital Public Radio, Inc.* (2001) 88 Cal.App.4th 33, 38.)

Ingrande's employment application expressly provides he was an at-will employee, and Employer's governing employee handbook expressly reiterated that agreement. Ingrande argues that, notwithstanding the express language in his contract,[14] he raised a

---

[14]    Ingrande also asserts that, under *Harden v. Maybelline Sales Corp.* (1991) 230 Cal.App.3d 1550, an at-will clause in an employment application is not controlling but instead may be rebutted by evidence showing the parties intended to limit the employer's ability to terminate the employee to "for cause" terminations. Ingrande misreads *Harden*. In *Harden*, the plaintiff applied for a position and the application form stated the employment was at-will. However, when the employer sent the plaintiff a written formal job offer, it did not contain the at-will specification. (*Id*. at p. 1553.) *Harden* merely concluded that, when there is an express written job offer accepted by the employee that omits the at-will condition, there is a triable issue of fact whether the parties intended the written offer to supersede the at-will condition contained in the job application. (*Id.* at pp. 1555-1556.) *Harden* did not hold that, even *absent* this subsequent written contract, an employee could avoid the express at-will condition contained in the application, and the authorities would not appear to support that reading of *Harden*. (See, e.g., *Wagner v. Glendale Adventist Medical Center* (1989) 216 Cal.App.3d 1379, 1387-1394 [affirming summary judgment, notwithstanding evidence from employee supporting implied

21

triable issue of fact as to the existence of an implied agreement limiting Employer's ability to terminate his employment except for cause by his evidence that (1) he was a long-term employee, and (2) Employer had a "three rule write up policy for discipline."[15] However, the length of Ingrande's employment is inadequate to raise a triable issue of fact that the express terms of his at-will contract were superseded by an implied agreement. (*Guz, supra*, 24 Cal.4th at pp. 343-344 [in opposing summary judgment, "the undoubted length and merit of Guz's Bechtel career does not bolster his claim that his at-will status had been altered by an implied contract. We must look elsewhere for evidence raising a triable issue that Bechtel entered and breached an implied contract limiting its right to terminate Guz's employment."].) Ingrande's "evidence" Employer had a three

agreement to limit termination to for-cause termination, because employment application and employee handbook clearly stated employment was at-will and these writings were a complete and final expression of this term and preclude evidence of a prior or contemporaneous collateral agreement at variance with this term].) *Harden* is irrelevant because there was no subsequent written contract with Ingrande that might have superseded the employment application.

[15]    Ingrande also asserts on appeal that other evidence created a triable issue of fact on whether Employer was required to have cause to terminate his employment. For example, he cites the deposition of Ms. Tillman, the human resources director for the Pacific South region who approved Ingrande's employment termination, as admitting Ingrande's employment could only be terminated for cause. Ingrande's argument rests on a misconstruction of Tillman's testimony. Tillman, after testifying Ingrande was "not terminated at will," clarified that he was in fact terminated "for violating a policy," whereas "at will he could be terminated without cause." Her statement of *the cause that in fact led* to Ingrande's termination is not an admission that Employer was *required to have* a cause to terminate him. Ingrande also adverts to Ms. Quattlebaum's testimony that, in light of his tenure and position as assistant store manager, he would not be terminated without approval at the regional level. Although that testimony shows regional approval *to* terminate an employee's employment was required, that is not the equivalent of admitting the regional office could only give approval for such termination *if* cause existed.

22

rule write-up policy is even less persuasive, because the testimony he cites does not support his claim Employer could only terminate an employee after multiple "write ups."[16] We conclude Ingrande produced no evidence raising a triable issue of fact that the express declaration he was an at-will employee had been supplanted by an implied agreement to limit Employer's right to terminate Ingrande's employment only for cause, and therefore summary adjudication on Ingrande's First cause of action for breach of implied contract was proper.

*Analysis of "Adequate Cause" Holding*

Even assuming Employer was required to have "cause" to terminate Ingrande's employment, the undisputed material facts showed Employer's decision makers believed, based on an investigation, Ingrande had committed a major safety violation that its own policies stated were grounds for immediate employment termination.

Our Supreme Court in *Cotran v. Rollins Hudig Hall Internat., Inc.* (1998) 17 Cal.4th 93 (*Cotran*) explained that " 'good cause' in the context of implied employment contracts [means] . . . fair and honest reasons, regulated by good faith on the part of the employer, that are not trivial, arbitrary or capricious, unrelated to business needs or goals, or pretextual." (*Cotran,* at pp. 107-108.) *Cotran* explained that "[t]he proper inquiry . . . is not, 'Did the employee *in fact* commit the act leading to dismissal?' It is, 'Was the

---

16      Ingrande cites the deposition testimony of Ms. Jorgenson (a human resources manager for Employer) and Mr. Mendoza for his argument.  However, the cited testimony from Jorgenson shows that, in response to questions about the alleged "three write-up rule," she replied, "I'm not sure what you're referring to."  The cited testimony from Mendoza shows that, when asked whether there was a three write-up rule before an employee's employment could be terminated, he answered, "Not necessarily."

23

factual basis on which the employer concluded a dischargeable act had been committed reached honestly, after an appropriate investigation and for reasons that are not arbitrary or pretextual?' " (*Id*. at p. 107.)

Contrary to Ingrande's argument, the issue of whether an employer had "good cause" under the *Cotran* standards may be resolved on summary judgment. (See, e.g., *Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 873; accord, *Silva v. Lucky Stores, Inc.* (1998) 65 Cal.App.4th 256, 264 ["All of the elements of the *Cotran* standard are triable to the jury. [Citation.] However, if the facts are undisputed or admit of only one conclusion, then summary judgment may be entered on issues that otherwise would have been submitted to the jury."] (*Silva*).) Here, Employer's showing was that (1) the decision makers decided to terminate Ingrande's employment only after an investigation, (2) the investigation provided the decision makers reasonable grounds for believing Ingrande had engaged in the misconduct on which the decision to terminate employment was based, and (3) the cited reason for the termination was not trivial, arbitrary or capricious, or unrelated to business needs or goals.[17] Absent evidence raising a triable issue of material fact as to one of these three elements, summary judgment in favor of Employer, on the ground Employer had cause to terminate Ingrande's employment, would be proper. (*Serri v. Santa Clara University, supra,* 226 Cal.App.4th at pp. 872-874; *Silva, supra,* 65 Cal.App.4th at p. 264.)

---

[17] We recognize *Cotran* also stated the reasons for the termination must not be "pretextual." (*Cotran, supra*, 17 Cal.4th at p. 107.) We address Ingrande's claim that he showed a triable issue of fact that the stated reasons *were* pretextual below. (See Discussion, *supra,* at part IV.E.)

Ingrande asserts he raised a triable issue of fact on the first element because there were triable issues of fact (1) whether he in fact directed or allowed Jones to violate any safety standards, and (2) whether Employer's investigation reaching a contrary conclusion was flawed. The former issue—whether there is a factual dispute over whether Ingrande *actually* committed the misconduct—is irrelevant because, on the issue of "cause," *Cotran* is clear that "[t]he question critical to [an employer's] liability is not whether plaintiff in fact violated the . . . policy . . . but [instead is whether employer], acting in good faith following an appropriate investigation, had reasonable grounds for believing plaintiff had done so." (*King, supra,* 152 Cal.App.4th at p. 438 [affirming summary judgment despite appellant's evidence he did not in fact violate the policy].) As to the latter issue, even assuming there was a dispute over whether Employer's investigation could have been better, that dispute does not preclude summary judgment under *Cotran's* standards. In *Silva, supra,* 65 Cal.App.4th 256, as here, the plaintiff attempted to defeat the employer's summary judgment motion by contending that, although there was *an* investigation that reached the conclusion there had been misconduct, there were "triable issues of fact as to whether Lucky's investigation was appropriate under the circumstances [based on] the evidence show[ing] that Lucky failed to interview key people, ignored substantial exculpatory evidence and was swayed by rumor, gossip and innuendo." (*Id.* at p. 273.) *Silva* noted the investigator, an uninvolved human resources representative trained on how to conduct an investigation, obtained written statements, interviewed others, and provided the employee the opportunity to provide his own

25

statement, and reached his conclusions based on that investigation. (*Id.* at pp. 272-273.) Rejecting the plaintiff's claim that summary judgment was improper because of disputed issues over the adequacy of the investigation, *Silva* concluded that "[w]hile the investigation was not perfect, it was appropriate given that it was conducted 'under the exigencies of the workaday world and without benefit of the slow-moving machinery of a contested trial.' " (*Id.* at p. 275, quoting *Cotran, supra*, 17 Cal.4th at pp. 105-106.) We agree the investigation here was appropriate under the circumstances. Ingrande does not dispute that Employer obtained a written statement from both Jones (who stated he was asked to enter the compactor by Ingrande) and from Ingrande (who said he was present to support Jones). More importantly, Ingrande does not dispute Employer reviewed a video of the incident that clearly showed Ingrande was (at a minimum) an active participant when Jones entered the door to the compactor, notwithstanding the warning signs on the door. Because the undisputed material facts showed Employer conducted an investigation appropriate under the circumstances, Ingrande's efforts to present triable issues of fact on the alleged flawed nature of the investigation, or the conclusions reached based on that investigation, do not preclude summary adjudication under the *Cotran* framework.

*Conclusion*

We conclude the trial court correctly ruled Ingrande had not raised triable issues of material fact on whether his employment contract included an implied covenant restricting Employer to terminating his employment only for cause, and Ingrande did not

26

demonstrate triable issues of material fact on whether it *did* have adequate cause to terminate his employment. Accordingly, the court did not err in entering summary adjudication in favor of Employer on Ingrande's first cause of action for breach of implied contract.

C. Fraud Claims

Ingrande's FAC, in his second and third causes of action sounding in fraud, alleged Employer made numerous representations that Ingrande relied on but the representations were false and caused injury to him. Ingrande argues the court erred when it entered summary adjudication on these claims because (1) he demonstrated triable issues of material fact on certain of the fraud allegations, and (2) Employer's motion purportedly did not address all of the alleged misrepresentations contained in the second and third causes of action.

*Background*

Ingrande's claims sounding in fraud alleged a laundry list of allegedly false representations: (1) Employer " 'always took care of their associates,' " " 'did the right thing,' " wanted " 'career associates,' " and "was fair" (FAC, ¶¶ 78.a., 78.g. & 78.j.); (2) Employer would pay 100 percent of Ingrande's salary for medical leaves of absence (FAC, ¶ 78.b.); (3) Ingrande "would retire a wealthy man" (FAC, ¶ 78c.); (4) Employer would not discriminate against its employees (FAC, ¶ 78.d.); (5) Employer would follow safety procedures (FAC, ¶ 78.e.); and (6) Employer would follow state and federal law (FAC, ¶ 78.i.). Employer's motion for summary judgment argued it was entitled to

27

summary adjudication on Ingrande's fraud claims because (1) none of the alleged representations were actionable representations of past or present facts but were instead nonactionable "puffery" and/or predictions about the future or predictions about the conduct of third parties, and/or (2) Ingrande could not show reliance on many of the described representations because he knew (or became aware of) the true facts.

Ingrande's opposition to Employer's motion for summary adjudication on his fraud claims argued the motion should be denied because Employer did not address every alleged misrepresentation, including the representations contained in the employee handbook (which Ingrande incorporated by reference) that Ingrande claimed were false. He also argued, without citation to authority, that representations he specifically alleged *were* actionable representations of past or present facts rather than "puffery" and/or predictions about the future, and that the fact he continued working for Employer showed he detrimentally relied on those representations.

The court concluded Ingrande had not shown a triable issue of fact on his claims sounding in fraud, because Ingrande's opposition to the motion for summary judgment did not identify any false representations by Employer as to past or present *facts* (rather than statements that were predictions about the future or were mere "puffery") and he had not shown any detrimental reliance on many of the alleged misrepresentations. Instead, the court found Ingrande merely relied on the allegations of his complaint, along with irrelevant argument, to avoid summary adjudication of these claims, which was inadequate to avoid summary adjudication on them.

*Analysis*

A claim for negligent misrepresentation, as asserted in Ingrande's third cause of action, requires proof the defendant (1) made a misrepresentation of a past or existing material fact, (2) the misrepresentation was made without reasonable ground for believing it to be true, (3) the misrepresentation was made with intent to induce another's reliance on the fact misrepresented, (4) the party to whom it was directed was ignorant of the truth and justifiably relied on the misrepresentation, and (5) that reliance caused resulting damage. (See, e.g., *Shamsian v. Atlantic Richfield Co.* (2003) 107 Cal.App.4th 967, 983.) A claim for fraud, as asserted by Ingrande in his second cause of action, requires proof of the same elements with one exception: fraud requires the defendant had actual knowledge of falsity at the relevant time, rather than merely lacking reasonable grounds for believing the representation to be true. (See, e.g., *Apollo Capital Fund LLC v. Roth Capital Partners, LLC* (2007) 158 Cal.App.4th 226, 243.)

On appeal, Ingrande reargues that summary adjudication is improper when the defendant does not refute the entire cause of action, and therefore summary adjudication was improper because Employer's motion did not address the misrepresentations contained in the employee handbook Ingrande incorporated by reference. However, every element of a fraud cause of action must be specifically pleaded, including every alleged misrepresentation. (See, e.g, *Moncada v. West Coast Quartz Corp.* (2013) 221 Cal.App.4th 768, 776.) Employer's motion did address every *specifically pleaded* misrepresentation, and a party moving for summary judgment need not address issues not

29

framed by the complaint.  (*Government Employees Ins. Co. v. Superior Court* (2000) 79 Cal.App.4th 95, 98, fn. 4.)  Ingrande cites no authority suggesting a plaintiff, by attaching exhibits to his or her complaint, can avoid summary adjudication on a fraud claim unless the moving defendant has ferreted out and addressed every potential factual statement within those exhibits, including statements not specifically pleaded as part of the plaintiff's fraud claim, and we decline to adopt that rule here.

Ingrande alternatively argues he did raise triable issues of fact on three specific representations: (1) Employer falsely represented Ingrande would not be terminated unless it followed its policies and procedures for discipline; (2) Employer falsely represented that he would receive 100 percent of his salary for medical leaves of absence; and (3) Employer falsely represented Ingrande "would retire a wealthy man" from the stock he was issued as part of his compensation.  We are convinced Employer demonstrated it was entitled to summary adjudication insofar as Ingrande's fraud claims rested on these alleged statements.  For example, his effort to predicate his fraud claims based on the alleged representation Ingrande "would retire a wealthy man" from the stock he was issued as part of his compensation fails because "[i]t is hornbook law that an actionable misrepresentation must be made about past or existing facts; statements regarding future events are merely deemed opinions."  (*San Francisco Design Center Associates v. Portman Companies* (1995) 41 Cal.App.4th 29, 43-44.)  Because Ingrande

cites no pertinent authority that predictions about the value of stock can support a fraud claim, his fraud claim as to this representation fails.[18]

Ingrande's fraud claim on the other two representations fare no better. His claim that he was told he would receive 100 percent of his salary for a medical leave of absence was, at best, a *prediction* how the third party administrator of Employer's disability insurance program (Liberty Mutual) would react to his disability claim, and Ingrande's opposition to Employer's motion for summary adjudication did not dispute (1) that Employer's short-term disability policy explicitly states the third party administrator makes the determination on whether to pay an employee during a leave of absence, (2) Ingrande admitted he knew Liberty Mutual was "in charge of [his] claim and . . . they're the ones that are going to make the decision and pay [him]." " '[P]redictions as to future events, or statements as to future action by some third party, are deemed opinions, and not actionable fraud.' " (*Tarmann v. State Farm Mut. Auto. Ins. Co.* (1991) 2 Cal.App.4th 153, 158.)

Ingrande's final claim—Employer misrepresented that his employment would only be terminated after it followed its policies and procedures for disciplining employees—also fails. First, the implied representation—Ingrande was promised his employment would only be terminated after Employer followed its policies and procedures for

---

18     Although this ground is dispositive as to this specific alleged misrepresentation, Employer went further and showed this aspect of Ingrande's fraud claim failed for an additional reason: he did not reasonably rely on the representation as to stock values because Ingrande admitted in his deposition that he knew (and received documents from Employer advising him) stock values fluctuate and past performance of stock holdings was no guarantee of future performance.

disciplining employees—was a prediction of what Employer would do in the future. As previously discussed, this is not actionable. More importantly, as discussed above, Ingrande knew from the employment application (and was on notice from the governing employee handbook) that the express terms of his contract made him an at-will employee, which precludes an employee from interposing a fraud claim based on an implied representation the employer would terminate the employee's employment only for cause.[19] (See, e.g., *Slivinsky v. Watkins-Johnson Co.* (1990) 221 Cal.App.3d 799, 807 [express at-will term in contract bars fraud claim because no justifiable reliance]; accord, *McCreery v. Seacor* (W.D. Mich. 1996) 921 F.Supp. 489, 493-494 [summary judgment on fraud claim proper where alleged misrepresentation was directly contrary to express terms of employment contract].)

We conclude the trial court correctly found there was no triable issue of material fact on any of Ingrande's properly pleaded fraud claims, and therefore properly granted summary adjudication on them.

---

[19]     Finally, although not necessary to our decision, Ingrande has not demonstrated a triable issue of material fact that the representation (his employment would be terminated only in accordance with Employer's policies and procedures) was *false*. Ingrande's employment was terminated "in accordance" with Employer's *policy* (i.e. the policy that "knowingly allowing associates to perform work under unsafe conditions," or "directing any associate to violate company safety standards" would subject the offender to termination for a first offense), and was done only after Employer adhered to its *procedures* of investigating the incident and consulting with appropriate administrative personnel.

32

D. <u>The Wage Claims</u>

Ingrande's sixth cause of action asserted a wage claim alleging Employer was required to, but did not, pay Ingrande for overtime, and did not provide the required "break periods." The court granted summary adjudication as to these claims because it concluded Ingrande improperly attempted to create a triable issue of fact (1) by his declaration, which contradicted his deposition testimony; and (2) by claiming he was a nonexempt employee without pleading in his sixth cause of action that Employer had misclassified Ingrande as an exempt employee. Ingrande argues both conclusions are erroneous, and that he raised triable issues of material fact precluding summary adjudication on his sixth cause of action for unpaid wages.

*Background*

Employer's summary judgment motion noted the claims asserted by Ingrande—for unpaid overtime and failure to have break periods—have a three-year statute of limitations. Employer argued that, because it was undisputed Ingrande had been a salaried assistant store manager for *more* than three years before filing his lawsuit, any claims for unpaid overtime and failure to have break periods when he worked in a *non*exempt position were necessarily time-barred, and salaried managers who meet the requirements of the administrative, executive or professional exemptions are not entitled to overtime and break periods. Employer argued that, because Ingrande had no non-time-barred claims for overtime or break periods, and admitted during discovery that

33

Employer paid him all vacation and/or sick time due him, Ingrande had no facts supporting his sixth cause of action.

Ingrande, opposing the motion for summary adjudication of his sixth cause of action, noted claims that had accrued within three years before the lawsuit was filed were *not* time-barred. He also noted salaried employees are entitled to overtime unless they are "exempt" and, because Employer made no effort to satisfy its burden of showing he was an employee whose job responsibilities met the requirements for the administrative, executive or professional exemptions from the required overtime and break period protections, summary adjudication was improper.

The court granted summary adjudication on this claim. It reasoned Ingrande's claim—that he was entitled to overtime because he was not an exempt employee—was an attempt to avoid summary judgment by interposing a theretofore unpleaded claim that he had been "misclassified" as an exempt employee, and a party may not avoid summary judgment by raising factual disputes on "unpleaded" claims.[20]

---

[20]　The court also concluded Ingrande had improperly tried to create a triable issue of fact by his declaration averring he worked more than 40-hour work weeks as an assistant manager without receiving overtime. The trial court concluded that "contradict[ion] [of] his deposition testimony" could not be employed to avoid summary judgment. Our search of the record for this contradiction—i.e., Ingrande's admission during his deposition that he *had* been paid overtime while working as an assistant manager—has been unsuccessful. The only possible passage we have found is, when asked in deposition whether he was "not compensated for work you performed after you became an assistant store manager," Ingrande responded, "I don't recall at this time." We are unaware of any authority that makes Ingrande's deposition response fatally inconsistent with his averment he was not paid overtime. However, we need not reach that issue because Employer did not assert below that *these* responses warranted summary adjudication, but instead relied on the combined impact of the statute of limitations and

34

*Analysis*

Legal Framework

"Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek . . . shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee." (Lab. Code, § 510, subd. (a).) The regulatory scheme specifies that, when an employee is paid on a salaried basis, "[t]he overtime rate of compensation required to be paid to a nonexempt full-time salaried employee shall be computed by using the employee's regular hourly salary as one-fortieth (1/40) of the employee's weekly salary." (Cal. Code Regs., tit. 8, § 11040, subd. 3(A)(1)(c).) Thus, the fact an employee is salaried does not, standing alone, preclude a claim for overtime.

However, "[t]he Industrial Welfare Commission may establish exemptions from the requirement that an overtime rate of compensation be paid pursuant to Section[] 510 . . . for executive, administrative, and professional employees, if the employee is primarily engaged in the duties that meet the test of the exemption, customarily and regularly exercises discretion and independent judgment in performing those duties, and earns a monthly salary equivalent to no less than two times the state minimum wage for full-time employment." (Lab. Code, § 515, subd. (a).) Pursuant to the authority granted by this section to establish exemptions to the overtime pay provision of Labor Code section 510, the Industrial Welfare Commission has adopted rules applicable to

Ingrande's alleged exempt status to assert it was entitled to summary adjudication on his sixth cause of action.

35

professional, technical, clerical, mechanical, and similar occupations, and has established a five-part test to determine whether the administrative employee exemption applies. With minor variations, those exemptions apply if the employee (1) performs "office or non-manual work directly related to management policies or general business operations" of the employer or its customers, (2) "customarily and regularly exercise[] discretion and independent judgment," (3) "performs under only general supervision work along specialized or technical lines requiring special training" or "executes under only general supervision special assignments and tasks," (4) is engaged in the activities meeting the test for the exemption at least 50 percent of the time, and (5) earns twice the state's minimum wage. (Cal. Code Regs., tit. 8, § 11040, subd. 1(A).) Because these criteria are "[s]tated in the conjunctive, each of the five elements must be satisfied to find the employee exempt as an administrative employee." (*Eicher v. Advanced Business Integrators, Inc.* (2007) 151 Cal.App.4th 1363, 1372.)

Under the regulatory scheme, a salaried employee like Ingrande is entitled to overtime unless he is an exempt employee. The exemptions from overtime rules are to be narrowly construed (*Eicher v. Advanced Business Integrators, Inc., supra,* 151 Cal.App.4th at p. 1374), and "the assertion of an exemption from the overtime laws is considered to be an affirmative defense, and therefore the employer bears the burden of proving the employee's exemption." (*Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 794-795.)

It is axiomatic that "[t]he burden on a defendant moving for summary judgment based upon the assertion of an affirmative defense is [different] than the burden to show one or more elements of the plaintiff's cause of action cannot be established. Instead of merely submitting evidence to negate a single element of the plaintiff's cause of action, or offering evidence such as vague or insufficient discovery responses that the plaintiff does not have evidence to create an issue of fact as to one or more elements of his or her case [citation], 'the defendant has the initial burden to show that undisputed facts support *each element* of the affirmative defense' [citations] . . . . If the defendant does not meet this burden, the motion must be denied." (*Anderson v. Metalclad Insulation Corp.* (1999) 72 Cal.App.4th 284, 289-290.) Stated differently, " '[t]here is no obligation on the opposing party (plaintiffs here) to establish anything by affidavit unless and until the moving party has by affidavit stated " 'facts establishing *every element* [of the affirmative defense] necessary to sustain a judgment in his favor. (Citation omitted.)' " ' [Citation.] [¶] What this means . . . is that if an affirmative defense has four elements, it does not suffice even if the defendant produces *overwhelming* evidence as to three of those elements. If the defendant fails to address the fourth element at all or to produce substantial evidence supporting that element, the trial court cannot properly grant summary judgment. Moreover, a summary judgment granted in those circumstances would have to be reversed, even if the plaintiff failed to introduce a scintilla of evidence challenging that element." (*Huynh v. Ingersoll-Rand* (1993) 16 Cal.App.4th 825, 830-831.)

Here, Ingrande's sixth cause of action pleaded a claim alleging he was entitled to, but had not received, payment for overtime and for break periods that Employer had not provided. Although Employer alleged (as an affirmative defense) Ingrande was exempt from overtime laws, and its summary judgment motion peremptorily asserted summary adjudication on Ingrande's sixth cause of action should be entered because any claims *not* barred by the statute of limitations *were* barred because Ingrande was an exempt employee, Employer's motion contained no effort to show that *any* of the required elements necessary to establishing the affirmative defense of "exemption" under title 8, section 11040, subdivision 1(A) of the California Code of Regulations was met, much less that the undisputed material facts showed *all* of the required elements were met. Accordingly, summary adjudication on Ingrande's sixth cause of action must be reversed regardless of whether Ingrande "failed to introduce a scintilla of evidence" challenging those elements. (*Huynh v. Ingersoll-Rand, supra,* 16 Cal.App.4th at pp. 830-831.)

The trial court nevertheless entered summary adjudication on Ingrande's sixth cause of action because it concluded he had not alleged he was a nonexempt employee entitled to overtime under the Labor Code whom Employer had misclassified as exempt, and therefore he could not raise this new, unpleaded theory to avoid summary adjudication. However, exemption from the overtime laws is an affirmative defense on which the employer bears the burden of proof (*Ramirez v. Yosemite Water Co., supra,* 20 Cal.4th at pp. 794-795), and Employer cites no authority suggesting an employee who has pleaded a claim for unpaid overtime must also allege facts overcoming the employer's

38

affirmative defense of "exemption." Because the ordinary rules of pleading are clear that a plaintiff is *not* required to allege facts negating or anticipating possible affirmative defenses (see, e.g., *Stowe v. Fritzie Hotels, Inc.* (1955) 44 Cal.2d 416, 422; accord, *Cohen v. Five Brooks Stable* (2008) 159 Cal.App.4th 1476, 1496 ["a complaint 'should not state and attempt to controvert matters that the defendant might raise in [the] answer' "]), and Employer cites no authority suggesting a different rule applies to an employee's otherwise properly pleaded claim for alleging he or she was entitled to but was not paid overtime, the core rationale for the trial court's order granting summary adjudication on Ingrande's sixth cause of action was error. We reverse the trial court's ruling granting summary adjudication on Ingrande's sixth cause of action.

E. The "Termination in Violation of Public Policy" Claims

Ingrande's seventh and 10th causes of action asserted his employment was terminated in violation of public policy. In relevant part,[21] he alleged his employment termination was not due to his job performance but was instead because of his complaints about safety violations (seventh cause of action) and/or because of his age (seventh and 10th causes of action).[22] Ingrande argues that, because he demonstrated triable issues of

---

[21] His complaint also pleaded wrongful employment termination claims based on allegations he was terminated because of his gender and ethnicity. However, Ingrande on appeal raises no claim of error as to the trial court's ruling on those claims, and we therefore deem those claims abandoned (*Schmidt v. Bank of America, N.A.* (2014) 223 Cal.App.4th 1489, 1511) and do not further consider those aspects of Ingrande's pleaded causes of action.

[22] Ingrande's FAC alleged his employment was terminated in violation of public policy because the true reason he was terminated was because of his age and/or in

39

material fact on whether the true reasons Employer terminated his employment were these improper reasons, the court erred when it entered summary adjudication on these claims.

*Background*

Employer's motion asserted Ingrande was required to, but could not, satisfy his initial burden of showing a prima facie case of discriminatory or retaliatory employment termination, because his prima facie showing required evidence that (1) he was *performing competently* at his position *and* (2) the adverse employment action occurred *because* of the protected characteristic or activity. Employer argued (1) the undisputed facts showed he was *not* performing competently at his position because he sent or permitted Jones to enter the trash compactor, and (2) he had no evidence the person who recommended the adverse employment action (Campeau) or ultimately approved the adverse employment action (Tillman) knew, at the time of the recommendation and approval, that Ingrande had made complaints about Employer's safety practices or even knew (much less was motivated to terminate his employment because of) Ingrande's age.

retaliation for his complaints about safety violations. Because the standards for assessing the propriety of granting summary judgment on such claims apparently employ similar burden-shifting approaches (compare *Guz, supra*, 24 Cal.4th at p. 354 [applying three-stage burden-shifting test established by *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 to evaluate age discrimination claim] and *Loggins v. Kaiser Permanente Internat.* (2007) 151 Cal.App.4th 1102, 1108-1109 [when plaintiff alleges retaliatory employment termination either as claim under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.), or as claim for wrongful employment termination in violation of public policy, California employs burden-shifting analysis of *McDonnell Douglas* in evaluating summary judgment motion]), we examine Ingrande's seventh and 10th causes of action together.

40

Employer argued the absence of any evidence supporting Ingrande's prima facie case of retaliatory or discriminatory employment termination alone warranted summary adjudication on these claims.

Employer's motion alternatively asserted that, even if there was a modicum of evidence supporting the prima facie showing, thereby shifting the burden to Employer to show Ingrande's employment was terminated for a legitimate and nonprohibited reason, it was undisputed Employer's stated reason for the adverse employment action was a legitimate reason to terminate an employee's employment, which then required Ingrande to provide evidence raising a genuine issue of fact whether the proffered reason for his employment termination was pretextual. Employer asserted that, because Ingrande did not have any evidence the persons recommending or deciding the adverse employment action knew, at the time the decision was made to terminate his employment, he had made complaints about Employer's safety practices, or knew his age, Ingrande had no evidence raising a triable issue of fact that the articulated reason for the termination was merely a pretext to mask a prohibited reason.

Ingrande's opposition asserted he had evidence showing prima facie he was performing competently at his position, and there was evidence raising a triable issue of fact Campeau and Tillman knew his age and decided to terminate his employment *because* of his age, or decided to terminate his employment in retaliation for his complaints about safety violations. He argued this shifted the burden to Employer to show the decision to terminate his employment was based on considerations other than

41

his age or other protected considerations. Although Ingrande acknowledged Employer articulated a legitimate reason (the trash compactor incident), he claimed there was evidence raising a triable issue of fact whether the articulated reason was pretextual, because (1) there was evidence Employer was planning to terminate Ingrande's employment before the compactor incident, and (2) there was evidence from which a jury could conclude the articulated reason (the trash compactor incident) was a pretext masking the actual reason (Ingrande's age) for the employment termination.[23] Ingrande argued triable issues of fact precluded summary adjudication on his seventh and 10th causes of action.

The trial court concluded Ingrande did not raise triable issues of fact either on whether he was competently performing his job position or as to any causal connection between his age and the decision to terminate his employment, which was fatal to both his claim for age discrimination (10th cause of action) and his claim for wrongful employment termination in violation of public policy (seventh cause of action) insofar as it was premised on his assertion his employment was terminated because of his age.

---

[23] Ingrande argued the evidence showed (1) Employer's investigation of the incident was shoddy, (2) the decision makers *did* know Ingrande's age, (3) there was evidence Employer held meetings to establish quotas for firing older (and hence higher paid) employees where managers were instructed to " 'make up' reasons to terminate employees," (4) he had been threatened with employment termination by district manager Powers well before the compactor incident, and (5) Employer began laying the ground work for terminating Ingrande's employment even before the trash compactor incident by creating a series of "false write-ups" criticizing Ingrande's performance.

*Legal Framework*

As we previously concluded, Ingrande was an at-will employee subject to employment termination with or without cause. However, " '[although] an at-will employee may be terminated for no reason, or for an arbitrary or irrational reason, there can be no right to terminate for an unlawful reason or a purpose that contravenes fundamental public policy.' " (*Silo v. CHW Medical Foundation* (2002) 27 Cal.4th 1097, 1104.) A termination violating FEHA's policy against age discrimination, as alleged by Ingrande here, will support a claim for wrongful discharge in violation of public policy.[24] (*Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 897.)

---

[24] We are less sanguine that Ingrande's claim for wrongful termination, insofar as it was predicated on his claim he was terminated in retaliation for his "complaints about safety violations," would be equally viable. (Cf. *Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1257 [allegation of retaliation based on employee's complaints about "violations," when unaccompanied by citations to specific statutory or constitutional provisions embodying fundamental public policies involved, insufficient to create an issue of material fact justifying a trial on the merits of wrongful discharge claims].) However, it is unnecessary to definitively determine this issue, because Ingrande has not satisfied his burden on appeal of showing he raised a triable issue of fact that Campeau and Tillman even *knew* about his complaints about safety violations when they made the decision to terminate his employment, much less that the decision was made *in retaliation* for those complaints. Campeau and Tillman both averred they had no knowledge of his safety complaints, and Ingrande's brief on appeal, although asserting "there are a number of triable issues of material fact that prevent summary adjudication," attempts to support that assertion by a shotgun reference to 67 pages of the Clerks Transcript without identifying which parts of the cited pages support which aspects of his claims of error. The burden is on the appellant to affirmatively demonstrate error, and we conclude Ingrande's failure to cite to the record with particularity waives any claim of error. (Cf. *Dietz v. Meisenheimer & Herron* (2009) 177 Cal.App.4th 771, 799-800; see Cal. Rules of Court, rule 8.204(a)(1)(C).) "When an appellant's brief makes no reference to the pages of the record where a point can be found, an appellate court need not search through the record in an effort to discover the point purportedly made." (*In re S.C.* (2006) 138 Cal.App.4th 396, 406.) Because Ingrande's appellate brief does not identify

43

"An employee alleging age discrimination must ultimately prove that the adverse employment action taken was based on his or her age. Since direct evidence of such motivation is seldom available, the courts use a system of shifting burdens as an aid to the presentation and resolution of age discrimination cases. [Citations.] That system necessarily establishes the basic framework for reviewing motions for summary judgment in such cases." (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1002 (*Hersant*).) The applicable burden-shifting system involves a three-step analysis: (1) the employee must first establish a prima facie case of age discrimination; (2) if the employee establishes his or her prima facie case, the burden shifts to the employer to provide a legitimate non-age-based reason for the adverse employment action; and (3) if the employer satisfies its burden, the employee then must show the employer's articulated reason for the adverse employment action was a pretext to mask the actual, discriminatory reason for the adverse action. (*Guz, supra*, 24 Cal.4th at pp. 354-356; *Sada v. Robert F. Kennedy Medical Center* (1997) 56 Cal.App.4th 138, 148-150.) Under this burden-shifting analysis, once the employer has met its burden of showing its action was motivated by legitimate, non-age-based reasons, the employer is entitled to summary judgment unless the employee produces "evidence supporting a rational inference that *intentional discrimination . . . was the true cause* of the employer's actions. [Citation.]

what portions of the record demonstrate how he raised a triable issue of fact as to whether Campeau and Tillman knew of his safety complaints, we deem waived (and do not further examine) his claim that it was error to enter summary adjudication on his seventh cause of action insofar as it was predicated on an alleged termination in retaliation for such safety complaints.

[T]he great weight of federal and California authority holds that an employer is entitled to summary judgment if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory." (*Guz,* at p. 361, fn. omitted.)

*Analysis*

Under the applicable standards, it was Ingrande's burden in resisting Employer's motion for summary judgment initially to produce evidence necessary to show a "prima facie" case of age discrimination, which required evidence (1) he was a member of a protected class, (2) he was performing competently in the position he held, (3) he suffered an adverse employment action, and (4) some other evidence suggested the adverse action occurred because of his age. (*Guz, supra*, 24 Cal.4th at p. 355; cf. *Deschene v. Pinole Point Steele Co.* (1999) 76 Cal.App.4th 33, 44.) Although two of the required elements of the prima facie case were shown,[25] the court found Ingrande had *not* met the required prima facie showing because he had not shown he was performing competently in his job. The court also granted summary adjudication because he produced no evidence raising a triable issue of fact that the decision made by Tillman and Campeau to terminate Ingrande's employment was because of his age rather than because of his violation of Employer's safety rules.

---

[25] Ingrande contends, and Employer does not dispute, Ingrande adequately showed he was a member of the protected class because he was over 40 years of age (element (1)), and suffered an adverse action (element (3)).

Ingrande peremptorily asserts he satisfied element (2) because he averred he did not direct or assist Jones to violate safety standards, and showed Employer's conclusion to the contrary was based on a flawed investigation. Although he produced evidence suggesting Employer's investigation could have been better, in either its scope or its documentation, the conclusion reached by Employer—that Ingrande in fact was not "performing competently" because he violated the type of safety standards Employer's internal policies expressly caution are so serious as to warrant immediate termination—is amply supported by both the videotape of the trash compactor incident and by the written statements regarding that incident provided to Employer by Jones and Ingrande. Under these circumstances, we reject Ingrande's implied contention, made without citation to authority, that merely pointing out an employer's investigatory process was flawed is a substitute for the affirmative showing required of the employee that he or she demonstrate the employee was in fact "performing competently in the position" he or she occupied with the employer. (Cf. *King, supra,* 152 Cal.App.4th at pp. 435-437.)

Even assuming Ingrande showed he was otherwise competently performing his job apart from the trash compactor incident, Employer produced evidence that its articulated reason for discharging Ingrande was unrelated to his age (i.e. was based on his violation of a safety standard Employer's internal policies expressly caution are so serious as to warrant immediate termination of employment) and was reached after an investigation that provided it a good faith reason for believing Ingrande had in fact violated those policies. Under these circumstances, the burden then shifted to Ingrande to produce

46

evidence this articulated reason was a pretext to mask the real, age-based reason for his employment termination. (*Guz, supra*, 24 Cal.4th at pp. 354-356.) The court in *King, supra,* 152 Cal.App.4th 426, explaining the element of the employer's burden to make a sufficient showing of a legitimate reason for discharge in the context of a summary judgment motion, reasoned that when the employer has shown it conducted an investigation that led "the decision makers [to] entertain[] an honest belief that plaintiff had either personally falsified a driver's timecard or directed the driver to do so[,] . . . [the employer has met its burden and] it does not matter whether plaintiff actually did commit an integrity violation as long as UPS honestly believed he did" (*id*. at p. 433), even though the plaintiff claimed there was evidence the investigation was flawed or reached wrong conclusion. (*Id*. at pp. 435-437.) The same rationale controls here: Employer showed it reviewed the videotape of the trash compactor incident (and the written statements regarding the trash compactor incident provided to Employer by both Jones and Ingrande), all of which supported a legitimate, non-age-based reason for discharging him, and therefore the burden shifted to Ingrande to produce evidence showing Employer's articulated non-age-based reason for discharging him was pretext. (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 56, 68 (*Morgan*).)

When the burden shifts back to the employee, " 'to avoid summary judgment, an employee claiming discrimination must offer substantial evidence that the employer's stated nondiscriminatory reason for the adverse action was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two,

47

such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination.' [(Quoting *Hersant, supra,* 57 Cal.App.4th at pp. 1004-1005.)] [¶] Nor can the employee simply show the employer's decision was wrong, mistaken, or unwise. Rather, the employee ' "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reason able factfinder *could* rationally find them 'unworthy of credence,' [citation], and hence infer 'that the employer did not act for the [ . . . asserted] non-discriminatory reasons.' [Citations.]" [Citations.]' [(Quoting *Hersant,* at p. 1005.)]" (*Horn v. Cushman & Wakefield Western, Inc.* (1999) 72 Cal.App.4th 798, 806-807, fn. omitted.)

We are convinced Ingrande did not satisfy his burden of raising a triable issue of fact—either by direct evidence or by "[c]ircumstantial evidence of ' "pretense" [that is sufficiently] "specific" and "substantial" in order to create a triable issue [of pretext]' " (*Morgan, supra,* 88 Cal.App.4th at p. 69, quoting *Godwin v. Hunt Wesson, Inc.* (9th Cir. 1998) 150 F.3d 1217, 1222)—that the articulated reason for his employment termination was merely a pretext to hide that he was actually discharged because of his age. The record appears devoid of any *direct* evidence (*Morgan,* at p. 67 [" ' "Direct evidence is evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption" ' "], quoting *Godwin,* at p. 1221), such as any statements by the decision makers expressly revealing the existence of bias (*Godwin, supra*), suggesting Tillman or Campeau approved his discharge *because* of his age. We must examine whether

48

Ingrande's *circumstantial* evidence was sufficiently specific and substantial to raise a triable issue of fact whether Tillman or Campeau approved his discharge because of his age. (See, e.g., *Bergene v. Salt River Project Agric. Improvement & Power Dist.* (9th Cir. 2001) 272 F.3d 1136, 1142 ["Circumstantial evidence of pretext must be specific and substantial in order to survive summary judgment."].)

The evidence cited by Ingrande on appeal does not raise a triable issue of fact that the articulated reason for Tillman's and Campeau's approval of his employment termination—the trash compactor incident—was merely a pretext for the alleged actual reason (i.e. his age) they approved his employment termination. Ingrande first cites the evidence that the department in which Campeau worked (Employer's AACG department) generated a "ticket" around March 1, 2011, showing the AACG had been notified on that date of Ingrande's claim that Mr. Powers had been "threatening [Ingrande] for a long time." However, this was *after* Tillman and Campeau approved Ingrande's employment termination, and contains no hint that Powers's threats were animated by Ingrande's age. Ingrande makes no effort on appeal to explain how this "ticket" provides any basis for inferring Tillman or Campeau in fact approved his employment termination *because* of his age rather than because of the trash compactor incident. Ingrande next cites an e-mail from Ms. Jorgenson (Employer's district human resources manager, who participated in the discussions leading up to the discharge decision) to Mr. Peralta (the store manager), which Ingrande claims demonstrated Employer engaged in a "deceitful attempt to 'document the file' in order to justify the [termination]." However, that e-mail merely

49

contains Jorgenson's admonition that, in connection with the investigation of the trash compactor incident, "please make sure that everyone writes a statement for review." Although this e-mail may show a desire to insure the investigation was as complete as possible, and indeed the absence of the statements requested in this e-mail would undoubtedly have been additional fodder for Ingrande's claim of an *in*adequate investigation, it is pure speculation and conjecture that an employer's request to document the articulated reason for an employment termination shows the employer was attempting to mask a prohibited reason for the termination. (*Horn v. Cushman & Wakefield Western, Inc., supra,* 72 Cal.App.4th at p. 807 ["[A]n issue of fact can only be created by a conflict of evidence[,] . . . not . . . by speculation or conjecture."].)

Ingrande's remaining efforts to raise a triable issue of fact on pretext are equally unavailing. For example, he notes he was terminated for the trash compactor incident while Jones, an employee younger than 40, was not. Although pretext may be shown by disparate treatment evidence (*McDonnell Douglas Corp. v. Green, supra,* 411 U.S. at p. 804), a plaintiff relying on such evidence "must show that the 'comparables' are similarly-situated *in all respects.*" (*Mitchell v. Toledo Hosp.* (6th Cir. 1992) 964 F.2d 577, 583, italics added.) Ingrande was an experienced manager who directed Jones to go into the compactor, while Jones was a recently hired subordinate who acted pursuant to his manager's instructions. They are not similarly situated. (Cf. *Hargett v. National Westminster Bank, USA* (2d Cir. 1996) 78 F.3d 836, 839-840 [managers may be held to higher standards of conduct than lower level employees].) Ingrande also asserts on

50

appeal that "[o]lder employees were terminated to save money," but his appellate brief contains no citation to the record supporting this assertion,[26] and we do not further consider it. (*Sprague, supra,* 166 Cal.App.3d at p. 1050; *Lewis v. County of Sacramento, supra,* 93 Cal.App.4th at p. 116.)

Although Ingrande has demonstrated on appeal that he raised a triable issue of fact over whether Employer's investigation was imperfect, that showing falls short of the type of circumstantial evidence of pretext required to defeat a summary judgment motion directed at a claim of discrimination: " 'The [employee] cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. [Citations.] Rather, the [employee] must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them "unworthy of credence," [citation], and hence infer "that the employer did not act for the [. . . asserted] non-discriminatory reasons." [Citations.]' " (*Hersant, supra,* 57 Cal.App.4th at p. 1005.) Ingrande has not demonstrated on appeal that his evidentiary showing below would permit a reasonable factfinder to rationally find Employer's articulated reason for Ingrande's employment termination was so weak, implausible, inconsistent, incoherent or contradictory that the articulated reason was

---

26      Instead, Ingrande supports this assertion solely by citing a comment by Ms. Tillman that Home Depot stock had declined during the recession, and a comment by Mr. Mendoza that bonuses not paid to Ingrande would be shared among other store managers and assistant managers.

51

unworthy of credence, and therefore he has not demonstrated on appeal that the trial court's order granting summary adjudication on his seventh and 10th causes of action was erroneous.

## DISPOSITION

The judgment in favor of the individual defendants is affirmed, and the individual defendants are entitled to recover their costs on appeal against Ingrande. The judgment in favor of Employer is reversed, and the matter is remanded with directions that the superior court enter a new and different order granting Employer's motion for summary adjudication on all of Ingrande's causes of action except his sixth cause of action, and denying Employer's motion for summary adjudication on Ingrande's sixth cause of action. Ingrande and Employer shall bear their own respective costs on appeal.

McDONALD, J.

WE CONCUR:

HUFFMAN, Acting P. J.

NARES, J.

52